No. 04-98-00259-CV


Guillermo CANTU & Clemencia Cantu, Individually and on Behalf of the Estate of Raudel
Cantu; Cruz Rodriguez & San Juan Rodriguez, Individually and on Behalf of Ricardo and Cruz
Rodriguez, Jr. and Jose Perales & Maria Anabely Perales, Ind., Et Al.,

Appellants


v.


GENERAL MOTORS Corporation
,

Appellee


From the 229th Judicial District Court, Starr County, Texas

Trial Court No. 9740

Honorable Ben Martinez, Judge Presiding


Opinion by: Karen Angelini, Justice


Sitting: Tom Rickhoff, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: January 13, 1999


AFFIRMED

Nature of the case

 Guillermo Cantu and others(1) (collectively referred to as "Cantu") appeal a final judgment

rendered in favor of General Motors Corporation ("GM") based on a take-nothing jury verdict.
Cantu filed a products liability suit against GM alleging strict liability and negligence theories.
Cantu also filed suit against Leonardo Guillermo Rodriguez. Cantu alleged that a design defect in
a 1976 Chevrolet Blazer driven by Rodriguez caused an accident in which the plaintiffs' children
were killed. The jury found that the vehicle was not defective and that GM was not negligent. The
court then rendered a take-nothing judgment in favor of GM.

 On appeal, Cantu raises numerous evidentiary complaints. In his first, third, fourth, and sixth
issues, Cantu urges that the court erred in admitting evidence. In his second, fifth, and seventh
issues, Cantu argues that the court erred in excluding evidence. In his eighth issue, Cantu contends
that the cumulative effect of the court's evidentiary rulings denied him a fair trial and probably
resulted in an improper verdict. We affirm the judgment. 

Factual Background

 This lawsuit arose out of a car accident between the Blazer driven by Rodriguez and a 1990
Chevrolet Beretta containing four young men. The Blazer was headed westbound on U.S. 83 when
it collided head-on with the Beretta which was heading eastbound toward Rio Grande City. The
collision killed all four men in the Beretta. Rodriguez was ejected from the Blazer and taken to a
hospital where a blood test revealed a .21 blood alcohol content. Cantu contended that Rodriguez
applied his brakes and that alleged brake defects caused him to lose control and swerve into the
Beretta's lane. Cantu's liability expert testified that the seals of the rear axles were defective because
they allowed leakage of axle fluid onto the right rear brake which caused the car to veer to the left
when the brakes were applied. Cantu's expert also testified that the brake system was defective
because it had been improperly installed. GM argued that the accident was caused by Rodriguez's
intoxication.


Standard of review

 The admission or exclusion of evidence is a matter within the trial court's discretion. City
of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion if
its decision is "arbitrary, unreasonable, and without reference to guiding principles." Goode v.
Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997). In order to reverse a judgment due to an erroneous
evidentiary ruling, the appellant must demonstrate that the erroneous ruling "probably caused the
rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1); City of Brownsville, 897 S.W.2d at
753. To determine whether the error probably resulted in an improper judgment, we must review
the entire record. City of Brownsville, 897 S.W.2d at 754.

Witness statement

 In his first issue, Cantu alleges that the court erred in admitting exhibit 1, a transcribed
witness statement, because the statement was hearsay. The exhibit consisted of a typed transcript
of a recorded statement that an investigating officer took from a witness named Jesus Alaniz. The
investigating officer, Trooper Perez, was Cantu's first witness. Trooper Perez testified that the
physical evidence was consistent with Cantu's theory that Rodriguez swerved into the Beretta's lane
immediately before the collision. Defense counsel took Trooper Perez on voir dire and asked him
about the witness statement. Trooper Perez was handed a copy of Alaniz's transcribed witness
statement and he read the statement to the jury without objection. In his statement, Alaniz stated that
he passed a Beretta and then saw a white Blazer or Bronco on the wrong side of the road. Cantu
objected on the basis of hearsay when GM asked the court to admit the statement after Trooper Perez
had read it to the jury. Cantu argues that the statement was inadmissible because witness statements
in a police officer's file do not qualify under the public records and reports exception set forth in
Rule 803(8). See Tex. R. Civ. Evid. 803(8)(2); See Kratz v. Exxon Corp., 890 S.W.2d 899, 905 (Tex.
App.--El Paso 1994, no writ) (affirming exclusion of witness statements in police file as hearsay
and not subject to Rule 803(8) exception).

 GM contends that the witness statement was used to impeach Trooper Perez and not offered
for the truth of the matter asserted. GM also argues that Cantu has waived any complaint that the
statement constituted hearsay because he did not object on that basis when the statement was read
to the jury. See Tex. R. Civ. Evid. 802. Further, even if Cantu had made a timely objection, the
admission of exhibit 1 was cumulative of other testimony admitted without objection. See Mancorp,
Inc. v. Culpepper, 802 S.W.2d 226, 230 (Tex. 1990) (finding that erroneously admitted evidence
which is merely cumulative is harmless error). The deposition testimony of Alaniz was admitted
without objection and repeated the same statements made in exhibit 1. Thus, any error in admitting
the witness statement was harmless. We overrule Cantu's first issue. 

Probable cause affidavit 

 In his second issue, Cantu argues that the court erred in excluding exhibit 32, Trooper Perez's
probable cause affidavit. Cantu argues that the affidavit was admissible as a prior consistent
statement under Rule 801(e) which states that a statement is not hearsay if the declarant testifies at
trial, is subject to cross-examination, and the statement is consistent with his testimony and is offered
to rebut an express or implied charge against him of recent fabrication or improper influence or
motive. Tex. R. Civ. Evid. 801(e)(1)(B).

 Trooper Perez testified on direct examination that when he first questioned Alaniz, Alaniz
told him that the Blazer suddenly veered into the lane of oncoming traffic. On cross-examination,
defense counsel had Trooper Perez read Alaniz's transcribed statement which said that the Blazer
was in the wrong lane but did not mention that the Blazer suddenly veered into the wrong lane. On
re-direct, Cantu attempted to admit into evidence the probable cause affidavit in which Trooper
Perez stated that Alaniz initially told him that the Blazer veered into the Beretta's path. Although
the court excluded the affidavit, Trooper Perez testified that the affidavit stated that Alaniz made the
statement that the Blazer veered into the wrong lane.

 GM argues that even if the exhibit was admissible under Rule 801, the trial court had
discretion under Rule 403 to exclude it. Tex. R. Civ. Evid. 403. The court pointed out on the record
that the parties had spent "two hours" on whether Alaniz told Trooper Perez that the Blazer suddenly
veered into the wrong lane. Further, Trooper Perez testified about the statements in his affidavit on
two occasions. The affidavit came from the criminal case that arose from the accident and the court
seemed concerned that allowing this affidavit in would open the door to more evidence from the
criminal file. Thus, the trial court did not abuse its discretion by excluding exhibit 32. Further, any
harm in excluding the exhibit was diluted by the fact that Trooper Perez testified as to what the
affidavit stated. We overrule the second issue.

Demonstrative exhibits


 In his third issue, Cantu argues that the court erred by admitting into evidence GM's exhibits
18-19 and 21-29. These exhibits consisted of poster boards created during trial by defense counsel
which reflected portions of the testimony of Trooper Perez and John Stilson, the plaintiff's expert.(3)
Cantu objected at trial that the exhibits constituted hearsay and placed undue emphasis on certain
parts of the testimony. 

 GM argues that Cantu's contention should be rejected because the Texas Supreme Court
recently affirmed a case from the Fourth Court of Appeals in which this court found no abuse of
discretion in admitting a timeline into evidence. See Uniroyal Goodrich Tire Co. v. Martinez, 928
S.W.2d 64, 74 (Tex. App.--San Antonio 1995), aff'd, 977 S.W.2d 328 (Tex. 1998). This court
noted that a chart which summarizes previous testimony is rarely a source of reversible error. Id.
(citing Southwestern Bell Telephone Co. v. Vollmer, 805 S.W.2d 825, 832 (Tex. App.--Corpus
Christi 1991, writ denied) (finding chart that summarized gross sales merely duplicated previously
admitted testimony and any error was harmless)); Houston Lighting & Power Co. v. Klein Indep.
Sch. Dist., 739 S.W.2d 508, 519 (Tex. App.--Houston [14th Dist.] 1987, writ denied) (finding that
admission of large cards containing testimony excerpts was within court's discretion and once
admitted were required to be sent to jury room)).

 In the Uniroyal case, the court allowed into evidence a timeline that outlined the testimony
of an expert. The Texas Supreme Court held that: "Charts and diagrams that summarize, or perhaps
emphasize, testimony are admissible if the underlying information has been admitted into evidence,
or is subsequently admitted into evidence." Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d
328, 342 (Tex. 1998) (on rehearing). The Uniroyal case cites prior cases which supply the language
quoted above. See Speier v. Webster College, 616 S.W.2d 617, 618 (Tex. 1981); Champlin Oil &
Refining Co. v. Chastain, 403 S.W.2d 376, 389 (Tex. 1965). In the Speier case, the court allowed
into evidence a chart filled in by a lawyer during trial. The chart listed the twelve plaintiffs and the
attorney filled in the damages figure beside each name as each plaintiff testified. Speier, 616 S.W.2d
at 618. The supreme court held that the fact that the chart may have emphasized the testimony of
the plaintiffs did not make the chart inadmissible. Id. at 619. The court further stated that the chart
was useful in aiding the jury in recalling testimony as to the exact amount of damages. Id. The court
found that the trial court had not abused its discretion by admitting the chart into evidence. Id.

 In this case, the exhibits contained information that was admitted into evidence through the
testimony of Trooper Perez and John Stilson. Cantu does not complain that the exhibits inaccurately
reflect their testimony. Further, the exhibits could be viewed as assisting the jury in recalling the
testimony concerning the alterations to the Blazer. Thus, the court did not abuse its discretion in
admitting the exhibits. Further, any error was harmless because the exhibits merely summarized
previous testimony. See Uniroyal, 928 S.W.2d at 74. We overrule Cantu's third issue.

Videotape

 In his fourth issue, Cantu argues that the court erred by allowing a videotape, exhibit 45, into
evidence which was not produced more than thirty days before trial. Cantu states that during the
discovery process, he requested that GM produce all photographs and videotapes. According to
Cantu, GM produced a videotape with a computer-generated depiction of the accident created by
GM's accident reconstruction expert, Ed Martinez, fourteen days before trial. Cantu argues that GM
had a duty to supplement discovery not less than thirty days before trial. See Tex. R. Civ. P.
166b(6). Further, Rule 215(5) of the Rules of Civil Procedure states that a trial court, in the absence
of good cause, must exclude evidence offered by a party that had a duty to supplement.

 GM points to the record which reflects Cantu's objection to the videotape but also contains
GM's explanations as to why the videotape should not be excluded. GM explained that the
videotape was an updated version of a program already produced to Cantu. Cantu argued that the
videotape was different from computer runs that had originally been produced. GM then stated that
the information had always been available but that Cantu waited until fourteen days before trial to
avail himself of the information. The trial court apparently concluded the videotape was timely
produced. However, even if it was not timely produced, the objecting party must show that any error
"probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1). In this case,
the videotape was cumulative of the expert's testimony and served simply to illustrate the expert's
testimony as to how the accident occurred. See Mancorp, 802 S.W.2d at 230 (finding that
erroneously admitted evidence which is merely cumulative is harmless error). We overrule Cantu's
fourth issue.

Cross-examination

 In his fifth issue, Cantu complains that the court erred in refusing to allow him to cross-examine the defense expert, Martinez, with the materials in the expert's file in violation of Rules of
Civil Evidence 703 and 705. Cantu cross-examined Martinez about Trooper Perez's deposition and
the exhibits which were furnished to Martinez. According to the record, Cantu wanted to cross-examine Martinez about exhibit 12 from Perez's deposition which included the probable cause
affidavit which Cantu tried to enter into evidence as exhibit 32. However, we have already
determined that the affidavit was properly excluded, so the court did not abuse its discretion in
refusing to allow Cantu to cross-examine Martinez about the affidavit. We overrule Cantu's fifth
issue.

Tests

 In his sixth issue, Cantu alleges that the court erred in allowing videotape evidence of tests
by GM which were not conducted under circumstances reasonably similar to the circumstances of
the accident. The plaintiff's expert, Stilson, testified that the right rear brake lining was
contaminated by axle fluid and the left front brake had been misassembled. Stilson further testified
that the right rear brake had a 100% loss of efficiency and the left front brake had a 30-50%
reduction in efficiency which caused the Blazer to pull to the left when the brakes were applied.

 GM called Bruce Bowman, an engineer, to testify as a brake expert. Bowman disagreed with
Stilson's opinion that the non-functioning right brake and the partially functioning left brake would
cause the Blazer to veer to the left. Bowman conducted a test using a 1976 Blazer with instruments
to measure breaking force and reduced the brake efficiency in accordance with Stilson's testimony.
Bowman's test results showed that the brake inefficiency would cause the Blazer to pull to the right
rather than to the left. Bowman informed the jury that the test was not done to recreate the accident
but only to test Stilson's theory that the brake inefficiency would cause the Blazer to pull left. Cantu
cross-examined Bowman about the differences between the Blazer used in the test and the Blazer
involved in the accident. Bowman admitted that the test vehicle did not have big tires or a lift kit
as the Blazer did. "When there is dissimilarity in the [testing] conditions, the admission of the
experiment is within the trial court's discretion if the differences are minor or are explained to the
jury." Sosa By And Through Grant v. Koshy, 961 S.W.2d 420, 430 (Tex. App.--Houston [1st Dist.]
1997, pet. denied). The court did not abuse its discretion in allowing evidence of Bowman's test.
We overrule Cantu's sixth issue.

Expert

 In his seventh issue, Cantu argues that the court erred in refusing to admit evidence regarding
the qualifications of Stilson, the plaintiff's expert, in violation of Rule 702 of the Rules of Civil
Evidence. Cantu attempted to offer into evidence testimony that Stilson had ideas that automobile
makers had incorporated into vehicles. Cantu contends that a witness whose ideas have been
incorporated into vehicles is much more likely to be believed by a jury. Outside the presence of the
jury, plaintiff's counsel asked Stilson for examples of safety features that had been installed as a
result of his recommendations and Stilson gave examples such as fuel tanks and airbags. GM
objected and argued that they would have to contest each of Stilson's assertions. The court sustained
the objection and stated that if the testimony was going to create a longer trial on these issues it
would not be allowed. Under Rule 403, the court has discretion to exclude testimony if its probative
value is outweighed by the danger of undue delay. Tex. R. Civ. Evid. 403. GM further argues that
the omitted testimony has nothing to do with witness qualifications of experience, training, and
education. See Tex. R. Civ. Evid. 702. We agree. Therefore, the court did not err by excluding this
testimony. We overrule Cantu's seventh issue.

Cumulative error 

 In his eighth issue, Cantu urges that the cumulative effect of the court's errors denied him
a fair trial and were reasonably calculated to and probably resulted in an improper verdict. Cantu
concedes that no one ground of error would, standing alone, justify reversal. However, he contends
that because the errors related to critical and hotly disputed issues, the case should be remanded for
a new trial. Having found no harmful error, we cannot say that cumulative error exists. Further,
before a complaint of cumulative error can be sustained, the record must show that but for the
alleged errors, the jury would have rendered a verdict favorable to the appellant. See Pitman v.
Lightfoot, 937 S.W.2d 496, 537 (Tex. App.--San Antonio 1996, writ denied). Based on the
evidence, we cannot say that but for the alleged errors the jury would have rendered a verdict in
favor of Cantu. We overrule Cantu's eighth issue. 

 We affirm the judgment.

 Karen Angelini, Justice

DO NOT PUBLISH






1. The plaintiffs include Guillermo Cantu & Clemencia Cantu, Individually and on Behalf of the Estate of Raudel
Cantu; Cruz Rodriguez & San Juan Rodriguez, Individually and on Behalf of Ricardo and Cruz Rodriguez, Jr. and Jose
Perales & Maria Anabely Perales, Individually and on Behalf of the Estate of Leonard Perales.
2. Because the trial occurred in 1997 and the new Texas Rules of Evidence went into effect in March of 1998,
we will refer to the former Texas Rules of Civil Evidence in this case.
3. Exhibit 18 listed the four official police reports that Trooper Perez testified about and their exhibit numbers.
Exhibit 19 listed descriptions of Alaniz and the actions he undertook from the testimony of Trooper Perez. Exhibits 21-27 emphasized the testimony of Stilson and reflected his testimony concerning changes made to the Blazer and the brake
system.


Return to
4th Court of Appeals Opinions