The CITY OF BROWNSVILLE,
Petitioner,

v.

Eugenio ALVARADO and Olga
Alvarado, Respondents.

No. D–4598.

Supreme Court of Texas.

Argued Nov. 15, 1994.

Decided March 30, 1995.

Rehearing Overruled June 8, 1995.

William S. Helfand, Tina Snelling, J. Preston Wrotenbery, Houston, for petitioner.

Carter C. White, San Francisco, CA, Edward S. Stapleton, III, Yolanda De Leon, Brownsville, for respondents.

CORNYN, Justice, delivered the opinion of the Court, in which all JUSTICES join.

Ricardo Serna Alvarado committed suicide in the Brownsville City Jail by hanging himself with a blanket from the bars of his cell. His parents, Victor and Olga Alvarado, brought this wrongful death and survival action against the City, claiming that the City's negligence proximately caused Ricardo's death. Although the jury failed to find that any negligence on the part of the City caused Ricardo's death, the court of appeals reversed and remanded for a new trial, holding that the trial court had improperly excluded all the evidence relating to certain discrete grounds of negligence and that the trial court had confused and misled the jury by submitting questions on Ricardo's own negligence. 865 S.W.2d 148. Because we conclude that the error, if any, committed by the trial court was harmless, *see* TEX.R.APP.P. 184(b), we reverse the judgment of the court of appeals and render judgment that the Alvarados take nothing.

On November 10, 1988, nineteen-year old Ricardo was arrested for driving while intoxicated after hitting a parked car. He was booked at the Brownsville City Jail at 2:32 p.m. Ricardo was alone in the detoxification cell when Jailers Perez and Elizondo arrived for their afternoon shift. Although the jailers presented differing testimony about Ricardo's behavior during the time he remained in the cell, neither witnessed any indication that Ricardo was upset, emotional, violent, or suicidal. Ricardo's friends who had been with him earlier testified that he had been disturbed by the refusal of a schoolmate to accept flowers he had bought for her that day.

The City of Brownsville Jail Procedures Manual requires jailers to check prisoners every twenty minutes, and to check more frequently prisoners who are potentially suicidal or violent. Jailer Perez conducted the last cell check at which Ricardo was seen alive at 6:50 p.m. A few minutes after that

check, two new people were brought in for booking. During the booking procedure, the jailers' view of Ricardo's cell was obstructed by the door to the cell block. At 7:20 p.m., as Perez was taking one of the new prisoners to a cell, he discovered Ricardo hanging from the cell bars. Perez checked Ricardo's pulse and pupils and found no signs of life, and did not attempt to resuscitate Ricardo while waiting for the paramedics to arrive. The jailers justified their failure to timely perform the cell check on their understanding that booking procedures, which usually take ten to twenty minutes, had priority over cell checks.

At trial, the jail manual was admitted into evidence, but the trial court excluded evidence relating to the personnel history of one of the jailers, a previous suicide attempt at the jail, state and other jail standards, and alternative measures for identifying suicidal inmates. The jury was asked three questions: (1) did negligence, if any, of the City proximately cause Ricardo's death, (2) did the negligence or intentional conduct of Ricardo proximately cause his own death, and (3) what percentage of the negligence or intentional conduct that caused the death was attributable to the City and what percentage was attributable to Ricardo. The jury was instructed not to answer Question 3 unless it answered "yes" to both Questions 1 and 2. The jury answered "no" to Question 1, "yes" to Question 2, and did not answer Question 3.

Two issues concerning the conduct of the trial are presented for our review. First, whether the submission of Question 2 was harmful error. Second, whether the trial court's exclusion of some of the Alvarados' evidence was harmful error. We address each issue in turn.

■ The court of appeals determined that the submission of Question 2, inquiring about Ricardo's own conduct, was improper because Texas Civil Practice and Remedies Code § 93.001 prohibits the use of suicide as a defense if the suicide was caused in whole or in part by the City's breach of a legal standard. The court then determined that the improper submission was harmful because when read in conjunction with Questions 1 and 3, Question 2 confused and misled the jury into focusing on the cause of death, which was undisputedly suicide, instead of focusing on whether the City was negligent in allowing Ricardo to commit suicide. The City contends that the submission of Question 2 was harmless error in light of the jury's answer to Question 1.

■ Submission of an improper jury question can be harmless error if the jury's answers to other questions render the improper question immaterial. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex.1980); *Texas & New Orleans R.R. Co. v. McGinnis*, 130 Tex. 338, 109 S.W.2d 160, 163 (1937). A jury question is considered immaterial when its answer can be found elsewhere in the verdict or when its answer cannot alter the effect of the verdict. *Fleet v. Fleet*, 711 S.W.2d 1, 2 (Tex.1986); *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966); *Powers v. Standard Accident Ins. Co.*, 144 Tex. 415, 191 S.W.2d 7, 9 (1945). Submission of an immaterial issue is not harmful error unless the submission confused or misled the jury. *Bailey*, 609 S.W.2d at 750; *H.E. Butt Grocery Co. v. Johnson*, 226 S.W.2d 501, 504 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.). When determining whether a particular question could have confused or misled the jury, we "consider its probable effect on the minds of the jury in the light of the charge as a whole." *Texas Employers Ins. Ass'n v. McKay*, 146 Tex. 569, 210 S.W.2d 147, 149 (1948) (citing *Russell v. Great Am. Indem. Co.*, 127 Tex. 458, 94 S.W.2d 409, 410 (1936)).

Assuming without deciding that submission of Question 2 (Ricardo's negligence) was improper, it was plainly immaterial in light of the jury's "no" answer to Question 1 (the City's negligence). Once the jury found in answer to Question 1 that the City did not proximately cause Ricardo's death, the City was exonerated of liability, and neither an affirmative nor a negative answer to Question 2 could have altered the verdict. Reading the charge as a whole, we do not find that any of the questions submitted were ambiguous or misleading. The cause of death and the fact of suicide were never in doubt; the jury was simply asked to identify who was responsible. Moreover, the Alvarados did

not object to the specific wording of either Question 1 or Question 2, but only to the submission of Ricardo's negligence when they urged that the City alone was responsible. Under these circumstances, the submission of Question 2 was not harmful error. *See* TEX.R.APP.P. 184(b).

■ The Alvarados' second claim of harmful error relates to the trial court's exclusion of evidence. The trial court excluded all of the following evidence that the Alvarados claim supported discrete grounds of negligence: that one of the jailers had a practice of unnecessarily isolating inmates; that jail officials had not responded adequately to a 1986 suicide attempt; that the jailers received inadequate training in suicide identification and CPR; that the jail should have had video cameras in the detention areas of the jail; and that the jail failed to meet state jail standards regarding potentially suicidal inmates. The trial court excluded all of this evidence on the grounds that it did not involve the condition or use of tangible personal property and so governmental immunity was not waived, *see* TEX.CIV.PRAC. & REM. CODE § 101.021(2), or that it fell within the discretionary or police protection exemptions to the waiver of sovereign immunity in the Texas Tort Claims Act. TEX.CIV.PRAC. & REM.CODE §§ 101.055(3), 101.056.[1] The trial court also excluded evidence that the two jailers did not attempt to resuscitate Ricardo on the grounds that there was no evidence that the failure to administer cardio-pulmonary resuscitation was a proximate cause of Ricardo's death.

The court of appeals agreed with the Alvarados that exclusion of the evidence concerning the jailers' lack of training and Jailer Perez' policy of isolating inmates did involve the use of tangible personal property, namely, the door blocking the jailers' view of the cell block and the drunk tank itself. 865 S.W.2d at 158. The court also agreed that the jury should have been informed that the jailers failed to administer CPR because such evidence would have raised a fact issue as to whether the failure to administer CPR was a proximate cause of Ricardo's death. *Id.* Finally, the court of appeals agreed that the evidence concerning inadequate suicide identification and prevention training, failure to meet other jail standards, placement of the cameras, testimony concerning a 1986 suicide attempt, and Jailer Perez' employee evaluations was all admissible because it was incidental to police protection and raised an issue of negligent failure to implement policy, not the discretionary formulation of policy, which is protected under the Tort Claims Act. *See* TEX.CIV.PRAC. & REM.CODE §§ 101.055, 101.056. The court then determined that because all of the evidence relating to negligent training and negligent screening was excluded, and because negligent training and screening were discrete grounds of recovery, the exclusion of the evidence was harmful.

■ The admission and exclusion of evidence is committed to the trial court's sound discretion. *Gee v. Liberty Mut. Fire Ins. Co.* 765 S.W.2d 394, 396 (Tex.1989). A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992); *King v. Skelly,* 452 S.W.2d 691, 696 (Tex.1970). A successful challenge to evidentiary rulings usually requires the

---

1. **Section 101.021:**
   A governmental unit in the state is liable for:
   . . . .
   (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.
   **Section 101.055:**
   This chapter does not apply to a claim arising:
   . . . .
   (3) from the failure to provide or the method of providing police or fire protection.

   **Section 101.056:**
   This chapter does not apply to a claim based on:
   (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
   (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

complaining party to show that the judgment turns on the particular evidence excluded or admitted. *See GT & MC, Inc. v. Texas City Ref., Inc.,* 822 S.W.2d 252, 257 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Atlantic Mut. Ins. Co. v. Middleman,* 661 S.W.2d 182, 185 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). We determine whether the case turns on the evidence excluded by reviewing the entire record. *Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989); *Gee,* 765 S.W.2d at 396.

■ A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). The guiding rules and principles governing the exclusion of evidence in this case must be culled from the provisions of the Tort Claims Act applicable to the Alvarados' claims, specifically, the police protection and discretionary powers exceptions to the basic waiver of sovereign immunity. Both exceptions implicate the policy decisions of government.

■ In *State v. Terrell,* this Court elaborated on a distinction necessary to analyze governmental liability for policy decisions. 588 S.W.2d 784 (Tex.1979). Discussing both the police protection and the discretionary powers exemptions to the Tort Claims Act, the Court distinguished between the negligent *formulation* of policy, for which sovereign immunity is preserved, and the negligent *implementation* of policy, for which immunity is waived:

As we understand the two provisions, the purpose of both is the same: to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions. The interests to be served by these provisions are several—*e.g.,* effective, unfettered performance of officials in making policy decisions and the maintenance of the separation of powers between the executive, legislative, and judicial branches of government. [footnote omitted]

. . . .

Thus, if the negligence causing an injury lies in the formulating of policy—*i.e.,* the determining of the *method* of police protection to provide—the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the Act.

*Id.* at 787–88 (driving decisions by highway patrolman related to policy implementation); *see also City of Waco v. Hester,* 805 S.W.2d 807, 812–13 (Tex.App.—Waco 1990, writ denied) (failing to follow city policy regarding segregation of certain inmates related to policy implementation by jailers); *Forbus v. City of Denton,* 595 S.W.2d 621, 623 (Tex.Civ. App.—Fort Worth 1980, writ ref'd n.r.e.) (deciding what particular type of mattress to provide to prisoners related to policy implementation).[2]

Reviewing the record as a whole, we conclude that the trial court did not abuse its discretion by excluding the challenged evidence. Assuming that Ricardo's use of the jail-issued blanket was sufficient to bring his parents' claim within the Tort Claims Act, the evidence highlighted above was properly excluded because it pertained largely to the City's discretionary formulation of jail policy. The City's decision to use certain intake forms or perform cell checks at particular intervals did not of itself violate any requirements imposed on the City by law, and the jury was able to fully consider whether the jailers complied with the policy in place at the time. The recommendations made to the City following the 1986 suicide attempt were just that—recommendations for formulating or changing the City's jail policy.

■ As for the remaining items of excluded evidence, it cannot reasonably be said that the verdict probably would have been different upon their admission. Evidence from the police chief was admitted concerning the placement of cameras in the jail and why they were not placed in the cells. The

2. While recovery under the Texas Tort Claims Act is limited to negligent implementation of policy, a municipality may be liable under 42 U.S.C. § 1983 for choosing or formulating a policy with deliberate or conscious indifference to constitutional rights, including a pretrial detainee's right to adequate protection from known suicidal impulses. *See Evans v. City of Marlin,* 986 F.2d 104, 107 (5th Cir.1993); *Rhyne v. Henderson County,* 973 F.2d 386, 391–92 (5th Cir.1992).

fact of the jailers' failure to perform CPR was admitted, as was the coroner's opinion that revival is improbable when a person's pupils are fixed and dilated. The jury was able to consider the entire sequence of events and the behavior of the jailers from the time Ricardo was arrested until the paramedics arrived after his death. The City's Jail Procedures Manual was admitted in evidence as was the jailers' testimony that booking took priority over cell checks, and that they had seen nothing indicating to them that Ricardo was suicidal. The jury was also presented with the Alvarados' expert's testimony that the jailers had acted negligently in giving booking priority over cell checks. In other words, the jury was presented with all the evidence from which one could argue that the jailers failed to implement the policy established by the City. Considering all the evidence, admitted and excluded, we conclude that the Alvarados did not demonstrate that the trial court's evidentiary rulings probably caused the rendition of an improper judgment.

Accordingly, for the reasons explained above, we reverse the judgment of the court of appeals, and render judgment that the Alvarados take nothing.