**Barry R. LEDBETTER, Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY d/b/a Union Pacific Railroad Company, Appellee.**

No. 12–99–00041–CV.

Court of Appeals of Texas, Tyler.

Dec. 30, 1999.

Douglas K. Rush, St. Louis, Mo., Charles Nichols, Palestine, for appellant.

Cathleen C. Herasimchuk, Kim Whittington, Houston, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

HADDEN, Justice.

Barry R. Ledbetter ("Ledbetter") sued his employer Missouri Pacific Railroad Company d/b/a Union Pacific Railroad Company ("Union Pacific") under the Federal Employer's Liability Act, 45 U.S.C.A. § 51 et seq. (West 1986), for alleged back injuries he suffered in two separate work-related accidents. The first accident occurred on October 9, 1993. The second occurred on September 25, 1995, when Ledbetter tripped over an air box cover in Union Pacific's San Antonio rail yard. At trial, the jury found that Ledbetter was negligent and that Union Pacific was not negligent with regard to the first accident.[1] However, the jury found that both Ledbetter and Union Pacific were negligent with regard to the second accident. The jury apportioned 10% of the responsibility for the second accident to Union Pacific and 90% to Ledbetter. Finally, the jury assessed Ledbetter's total damages at $200,000.00. Pursuant to 45 U.S.C.A. § 53 (West 1986), the trial court reduced the damages awarded by the jury by the percentage of responsibility attributed to the Plaintiff. Thus, the trial court entered a final judgment awarding total damages of $20,000.00 to Ledbetter. In one issue presented,[2] Ledbetter argues that the trial court erred in excluding testimony he was prepared to present concerning alleged violations of Occupational Safety and Health Administration ("OSHA") standards by Union Pacific. We will affirm.

## FACTUAL BACKGROUND

Ledbetter worked as a car man for Union Pacific. Basically, a car man inspects and repairs railroad cars. On September 25, 1995, Ledbetter was working along the repair or "rip" tracks in the San Antonio rail yard. The evidence presented at trial showed that this is a large, open area of railroad tracks where engines and cars are brought in to be repaired. A shed covers this area to protect the workers from weather, but both ends of this area are open so that the trains can move in and out along the tracks. There are eight covered air boxes in the rip track area, four boxes for each of the two tracks. These boxes provide below ground access to air hoses, which are used to supply air jacks and to do brake tests on the cars. The boxes themselves are approximately 11" square and are elevated about three-eighths to one-half inch above the floor. At trial, Ledbetter contended that as he walked along the concrete floor of the rip track facility, he tripped over one of the elevated air box covers sustaining an injury to his back. Although the exact distance from the air box cover to the track does not appear in the record, photographs of the rip track area introduced at trial showed that the distance between the two was minimal, perhaps as little as a few feet.

## APPLICABILITY OF OSHA STANDARDS

Prior to trial, Union Pacific filed a motion in limine to exclude any evidence pertaining to OSHA standards or alleged violations of OSHA standards. Union Pacific contended that OSHA standards did not apply in this case because they have been displaced by the Federal Railroad Administration ("FRA"). The trial court granted Union Pacific's request and sustained Union Pacific's objection to such evidence at trial.

During his case-in-chief, Ledbetter made a bill of exception containing the deposition testimony of a safety expert, Dr. David Anderson ("Anderson"), who is currently working an educator providing

---

1. Ledbetter does not challenge this finding on appeal.

2. In his brief, Ledbetter presents two issues for review. However, at oral argument, Ledbetter informed the court that he desired to withdraw his second issue from consideration. Therefore, we will not address that issue.

instruction to employers concerning OSHA regulations. Anderson testified that with regard to walking areas in the work place, OSHA regulations require "a clear access, a well-marked aisle, and . . . even walking surfaces. . . ." He also testified that there is a mandatory requirement under OSHA that "aisles and passages" be delineated at industrial sites. Further, Anderson testified that he did not observe "designated walkways and passages" at Union Pacific's San Antonio Rail Yard when he inspected it. When asked whether this condition violated "OSHA 1910.22," Anderson testified that it was possible. Finally, Anderson testified that Union Pacific violated OSHA standards with regard to "clear walking surfaces" by failing to have the air box cover fit flush to the ground. Ledbetter contends that this testimony from Anderson demonstrated that: (1) OSHA regulations constituted a standard of care applicable to Union Pacific and (2) Union Pacific's violation of the standard of care constituted evidence of negligence on the part of Union Pacific which should have been considered by the jury.

Ledbetter also made a bill of exception consisting of the deposition testimony of Preston Sargent, who is the Manager of Special Projects (Mechanical) for Union Pacific. Sargent testified that Union Pacific typically follows OSHA guidelines with regard to the painting of certain areas or objects for safety. He testified that in a rip track facility, pursuant to OSHA guidelines, Union Pacific would probably mark walkways and areas where there are "differential elevations." With regard to air boxes, Sargent testified that the engineering department of Union Pacific would probably ask that "a stripe be put around the perimeter." Finally, he testified that OSHA regulations provide a scheme for color coding different items and that, within this scheme, yellow is used as a "safety highlight." Ledbetter argues that this testimony from Sargent constituted an admission against the interest of Union Pacific in that OSHA regulations did apply to the condition which caused Ledbetter's injury.

Further, Ledbetter asserts that this testimony showed that Union Pacific's noncompliance with OSHA regulations constituted evidence of negligence which should have been considered by the jury.

 The admission and exclusion of evidence is a matter within the trial court's sound discretion. See City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion when it rules "without regard to any guiding rules or principles." Id. at 754. An appellate court must uphold a trial judge's evidentiary ruling if there is any basis for the ruling. See State Bar of Texas v. Evans, 774 S.W.2d 656, 658 n. 5 (Tex. 1989). To obtain reversal of a judgment based on the erroneous admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error probably caused the rendition of an improper judgment. See Tex.R.App. P. 44.1(a)(1); McCraw v. Maris, 828 S.W.2d 756, 757 (Tex.1992). To successfully challenge an evidentiary ruling, an appellant must usually show that the judgment turns on the particular excluded evidence. See City of Brownsville, 897 S.W.2d at 753–54. An appellate court must review the entire record to determine whether the case turns on the excluded evidence. Id. at 754.

Ledbetter contends that the trial court erred in excluding the above-referenced testimony of Anderson and Sargent because a FRA policy statement ("the policy statement") "specifically holds that OSHA regulations . . . concerning walking and working surfaces are . . . applicable to the railroads." The policy statement provides that "OSHA regulations concerning working surfaces deal with such matters as ladders, stairways, platforms, scaffolds and floor openings. Generally, these regulations are applicable in railroad offices, shops and other fixed work places." 43 Fed.Reg. 10583, 10587 (1978). Put simply, Ledbetter argues that the accident at issue occurred in a "railroad shop." Therefore,

Ledbetter asserts that OSHA regulations were applicable to the walking-working surface in this "shop." In support of his argument, Ledbetter points to the testimony of Anderson and Sargent which indicated that OSHA regulations were applicable to the walking-working surface where the accident occurred.

However, Ledbetter acknowledges that this same policy statement indicates that there are three aspects of the railroad industry which fall within the exclusive jurisdiction of the FRA, thereby displacing any otherwise applicable OSHA regulations.[3] *Id.* The policy statement describes the third of the three areas as follows:

> ... OSHA regulations would not apply to ladders, platforms, and other surfaces on signal masts, cantenary systems, railroad bridges, turntables, and similar structures or to walkways beside the tracks in yards or along the right-of-way. These are areas which are so much a part of the operating environment that they must be regulated by the agency with primary responsibility for railroad safety.

*Id.* Relying upon this provision, Union Pacific argues that OSHA regulations were not applicable because Ledbetter was working "on a walkway beside the track in a repair yard" when he tripped over the air box cover.

In support of its position, Union Pacific relies upon *Velasquez v. Southern Pac. Transp. Co.*, 734 F.2d 216 (5th Cir.1984). In *Velasquez*, Albert Velasquez ("Velasquez"), an employee of Southern Pacific, was injured while working on a bridge "situated in a railroad yard consisting of nine to ten tracks." *Id.* at 217. Velasquez and several co-workers "had to remove a portion of the wooden walkway along the track so that they could reach the area underneath the track. Velasquez slipped

and fell through this opening, landing on the creek bed nine feet below." Velasquez brought suit against Southern Pacific contending that the "railroad had a duty to provide safeguards to prevent a worker from falling through the hole in the walkway." Southern Pacific filed a motion in limine to "exclude any evidence of OSHA regulations, arguing that those standards did not apply to railroad walkways and bridges." The trial court denied the motion in limine concluding that OSHA regulations did apply in these areas. At trial, Velasquez presented the testimony of a safety specialist, who "explained the role of OSHA regulations in general, and asserted that these regulations applied to the railroad." The trial court provided an instruction to the jury suggesting that OSHA regulations comprised the proper standard of care. The jury found Southern Pacific negligent and awarded Velasquez $57,600 in damages. *Id.*

On appeal, the court agreed with Southern Pacific's argument that "OSHA standards do not apply to walkways along the tracks, or railroad bridges, because they have been displaced by a ... (FRA) policy statement." The court noted that the accident "occurred on a walkway beside a track in a yard, and on a railroad bridge." *Id.* at 218. Thus, it was reversible error for the trial court to instruct the jury in the manner that it did. *Id.* at 219.

Ledbetter argues that Union Pacific's reliance on *Velasquez* is misplaced. He asserts that the *Velasquez* court merely held that OSHA regulations concerning "walkways on bridges" or "the guarding of openings on railroad bridges" were displaced. He contends, therefore, that *Velasquez* is not applicable to walking-working surfaces in a railroad shop. We disagree. In our view, the fact that Velasquez was working on a bridge or "a

---

**3.** This displacement is in accordance with the OSHA Act of 1970 which provides in pertinent part:

Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies ... exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

29 U.S.C.A. § 653(b)(1) (West 1999).

walkway on a bridge" at the time of the accident was not wholly determinative of the outcome of the case. The court stated that OSHA regulations do not apply to "walkways along the tracks, *or* railroad bridges." *Id.* at 218 (emphasis added). Later on in the opinion, the court stated that the accident occurred "on a walkway beside a track in a yard, *and* on a railroad bridge" and that "such *areas* are not subject to OSHA regulations." *Id.* (emphasis added). These statements by the *Velasquez* court are supported by the language of the policy statement itself which provides that OSHA regulations do not apply to "railroad bridges ... or to walkways beside the tracks in yards." 53 Fed.Reg. at 10587. Neither the *Velasquez* opinion nor the policy statement limit the displacement of OSHA regulations to those concerning walkways on bridges. It is clearly enough that the area in question be either a walkway along the track in a yard *or* a bridge. Based on the language in *Velasquez* and the policy statement, we conclude that had the accident in *Velasquez* occurred on a walkway beside a track in a yard, but not one on a bridge, the result would have been the same. Accordingly, we also conclude that if the accident at issue here occurred "on a walkway beside a track in a yard," the outcome of this case is dictated by the court's reasoning in *Velasquez*.

We are unpersuaded by Ledbetter's argument that he was working in a railroad shop when this accident occurred. As discussed above, the evidence presented at trial showed that the rip track facility consists of railroad tracks where cars are actually brought into the facility on the tracks to be repaired. These tracks are within Union Pacific's San Antonio rail yard. As a car man, Ledbetter worked right next to the tracks repairing and inspecting railroad cars. Ledbetter was injured while walking on a concrete walkway right next to the tracks. The air box cover which Ledbetter tripped over is a minimal distance from the rip track. In the policy

statement, the FRA explained that OSHA regulations do not apply to walkways beside tracks in yards because "these areas are so much a part of the operating environment that they must be regulated by the agency with primary responsibility for railroad safety." 53 Fed.Reg. 10587. Based on the foregoing, we conclude that the area Ledbetter worked in is a part of the "operating environment" of the railroad such that it would best be regulated by the FRA. Thus, we hold that Ledbetter was injured on a "walkway beside a track in yard" and that such an area is not subject to OSHA regulations. *See Velasquez*, 734 F.2d at 218.

As in *Velasquez*, we are not persuaded that OSHA regulations are applicable simply because witnesses testified that they are. "Whether a particular legal principle is applicable in a case or governs a case is a matter of law for the trial court. Similarly, matters of statutory construction are questions of law for the trial court, rather than issues of fact." *Wisenbarger v. Gonzales Warm Springs Rehabilitation Hosp., Inc.*, 789 S.W.2d 688, 691 (Tex. App.—Corpus Christi 1990, writ denied) (citations omitted). "An expert witness may not testify to his opinion on a pure question of law." *Lyondell Petrochemical Co. v. Fluor Daniel, Inc.*, 888 S.W.2d 547, 554 (Tex.App.—Houston [1st Dist.] 1994, writ denied). The question of whether OSHA regulations comprised the proper standard of care in this case was one of law for the trial court. For the reasons discussed above, we hold that the trial court did not err in excluding the testimony contained in Ledbetter's two bills of exception.

Even if we were to conclude that the trial court erred in excluding this testimony, we would hold that such error was harmless. Much of the excluded testimony concerned only generic references to "OSHA regulations." The only specific regulation contained in the excluded testimony is 29 CFR § 1910.22 (1998), which is

discussed in Anderson's deposition. The relevant portion of Section 1910.22 states:

(b) Aisles and passageways.

(1) ... Aisles and passageways shall be kept clear and in good repairs, with no obstruction across or in aisles that could create a hazard.

(2) Permanent aisles and passageways shall be appropriately marked.

29 CFR § 1910.22 (1998). When asked whether Union Pacific had violated this provision, Anderson was only able to state that, "It's possible." We note that section 1910.22 does not pertain to air box covers in any way. It merely sets forth general guidelines for maintaining clear aisles and passageways.

At trial, Ledbetter requested that he be allowed to redact those portions of Anderson's testimony which pertained to OSHA. The trial court agreed to this request and permitted Ledbetter to present the following testimony from Anderson:

Q. Had you conducted a safety audit regarding the air box plate cover, what would your recommendations have been concerning that box cover to create a safe walkway for employees?

A. Initially, I would suggest that they put some way— some marking on the pavement or the walk area to indicate that there may be a trip hazard present, such as yellow tape or yellow paint because it does not protrude above a walk surface area. That would immediately take care of the first concern. Secondly, they may want to consider painting the tops of these plates a contrasting color because they tend to be the same color as the cement they're in. Thirdly, the best fix I could think of would be to lower the plate and lower the box flush with the ground.

. . . .

Q. What about moving it outside designated walkways?

A. Well, that would make sense as well ... wouldn't it?

. . . .

Q. If you would have been the director of industrial hygiene for the Union Pacific and that proposal to put that air box cover had crossed your desk, would you have authorized it?

A. Not as it's installed.

This portion of Anderson's testimony, which is similar to Sargent's excluded testimony, clearly communicated Anderson's criticisms and recommendations concerning the manner in which the air box cover was installed. For the most part, these criticisms encompass the same areas, maintenance of clear aisles and passageways, covered by section 1910.22. This testimony also conveyed to the jury Anderson's ultimate opinion that the air box cover was unsafe. Thus, Ledbetter was allowed to introduce competent evidence from Anderson on the issue of the safety of the air box cover without reference to OSHA regulations. Further, with regard to the bill of exception containing Sargent's testimony, the record reflects that Ledbetter did utilize a portion of this testimony, which did not refer to OSHA [4], to impeach Union Pacific's safety expert.

---

4. Q. Did you read this portion of Mr. Sargent's deposition:

Question: "Does the Omaha engineering department of the Union Pacific Railroad, to your knowledge, have any standard of protocol or recommendations as to whether the lids on air boxes in repair facilities, repair tracks should be painted a different color to highlight them?

Answer: "What we would probably ask is that a stripe be put around the perimeter of the box."

. . . .

Q. Do your remember the next question?
Question: "Do the photographs that you have in front of you marked 1 through 14 of some of the air box covers at the Union Pacific San Antonio repair track have that stripe around the perimeter of the box?"
Answer: "No, sir."

Based on the foregoing and having reviewed the record, we conclude that the entire case did not turn on the excluded evidence. *See City of Brownsville,* 897 S.W.2d at 754. Further, "[t]he exclusion of evidence is harmless if it is cumulative of other evidence that was admitted on the same issue." *St. Paul Fire & Ins. Co. v. Confer,* 956 S.W.2d 825, 831 (Tex.App.—San Antonio 1997, pet. denied); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). The admitted testimony from Anderson and Sargent expressed substantially the same criticisms and opinions that would have been encompassed by any reference to OSHA regulations in the excluded testimony. For all of the foregoing reasons, we cannot say that the exclusion of the testimony contained in Ledbetter's two bills of exception probably caused the rendition of an improper judgment. Appellant's issue is overruled.

The judgment of the trial court is *affirmed.*