

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00319-CV

_____

SAIED EMAMI, Appellant

V.

KATHY JO EMAMI, Appellee

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-686313-20

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

## I. Introduction

Appellant Saied Emami (Husband) appeals the trial court's denial of his motion to revoke a mediated settlement agreement (MSA) and entry of a final decree of divorce pursuant to the MSA. In a single issue, Husband argues that the trial court erred in excluding his testimony regarding communications with his former attorney on the grounds that such testimony would violate the attorney–client privilege. Husband therefore requests that we vacate the decree and remand this case for a new hearing on the motion. Because we conclude that the exclusion of the evidence did not cause the rendition of an improper judgment, we affirm.

## II. Background

Husband and Appellee Kathy Jo Emami (Wife) married in 1990. In July 2020, Wife filed a petition for divorce, and Husband subsequently filed a counterpetition. On July 7, 2021, the parties engaged in mediation and signed the MSA, which was filed in the trial court the following day.

On July 28 and 29, 2021, Husband's new counsel filed a motion requesting that the trial court set aside the MSA on the grounds that it had been procured by duress.[1]

---

[1]The motion also cites coercion and fraud as bases for setting aside the MSA. However, the excluded evidence at issue here relates only to duress, not fraud. Moreover, although "duress" and "coercion" are not exactly the same, they are often used interchangeably, and it appears that Husband does not intend them as separate defenses in this case. *See White v. Skagit Bonded Collectors, LLC*, No. C21-0697-LK, 2022 WL 2046286, at *12 n.6 (W.D. Wash. June 7, 2022) ("Courts use 'coercion' and

In the affidavit attached to the motion, Husband claimed the duress was based upon certain alleged threats and coercive statements made by his former attorney Farid Moghadassi and the mediator during the mediation.[2] Moghadassi filed a response opposing the motion as well as a petition in intervention seeking attorney's fees.

On September 27, 2021, the trial court held a hearing on the motion and the fee petition. During the hearing, Husband's new counsel called Husband to testify. When Husband's new attorney asked a question concerning what Husband and Moghadassi discussed during mediation—broaching the allegations in Husband's affidavit—Moghadassi successfully objected on the grounds that, among other things, such testimony would violate the attorney–client privilege.[3] Husband's new counsel understood the trial court's ruling to mean that all questions regarding what Husband and Moghadassi discussed during the course of Moghadassi's representation of Husband, including what was said during the mediation, were off limits. Accordingly,

'duress' interchangeably."). Indeed, Husband's briefing in this court focuses solely on duress, not fraud or coercion, as a basis for setting aside the MSA, and duress was the only defense the trial court referenced in its ruling on the motion. Accordingly, for purposes of this appeal, we will consider only Husband's claim of duress.

[2]In general terms, Husband bases his claim of duress on alleged pressure from Moghadassi and the mediator to sign the MSA. Specifically, Husband alleges that Moghadassi, *inter alia*, told him in a "loud voice" to sign the MSA and threatened to withdraw from representation if Husband did not sign it and that the mediator told Husband that she was married to a police officer (which caused Husband to feel threatened) and implied that Husband's claims would not likely prevail at trial.

[3]Moghadassi also objected on relevance grounds. However, the trial court granted his objection as to attorney–client privilege, and it is only that objection with which we are concerned for purposes of this appeal.

she did not ask any more questions concerning Moghadassi's alleged threats and coercive statements during the mediation.[4]

At the conclusion of the hearing, the trial court denied the motion and granted Moghadassi's fee petition. The trial court signed the divorce decree shortly thereafter. This appeal followed.

### III. Standard of Review

We review a trial court's ruling in admitting or excluding evidence under an abuse of discretion standard. *Richmond Condos. v. Skipworth Com. Plumbing, Inc.*, 245 S.W.3d 646, 664–65 (Tex. App.—Fort Worth 2008, pet. denied) (op. on reh'g) (citing *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000) (op. on reh'g)). A trial court abuses its discretion in admitting or excluding evidence if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002) (op. on reh'g); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). To obtain reversal of a judgment based on the erroneous admission or exclusion of evidence, an appellant must show not only that the trial court's ruling was in error but also that the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617

---

[4]This understanding of the trial court's ruling is supported by the trial court's subsequent clarifying statement during Moghadassi's testimony that "[a]ttorney–client privilege is intact and thereby any questions concerning what happened during the time of representation is off limits."

4

(Tex. 2000); *Ledbetter v. Mo. Pac. R.R. Co.*, 12 S.W.3d 139, 142 (Tex. App.—Tyler 1999, pet. denied). Thus, to successfully challenge an evidentiary ruling, an appellant generally must show that the judgment turns on the excluded evidence. *Ledbetter*, 12 S.W.3d at 142 (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995)).

Likewise, "[w]e review a trial court's decision not to set aside a mediated settlement agreement for an abuse of discretion."[5] *In re C.H.*, 298 S.W.3d 800, 804 (Tex. App.—Dallas 2009, no pet.); *accord In re Marriage of Atherton*, No. 14-17-00601-CV, 2018 WL 6217624, at *2 (Tex. App.—Houston [14th Dist.] Nov. 29, 2018, pet. denied) (mem. op.). A trial court does not abuse its discretion so long as there is some substantive, probative evidence to support the decision. *Crowson v. Crowson*, No. 03-11-00795-CV, 2013 WL 6665022, at *4 (Tex. App.—Austin Dec. 13, 2013, pet. denied) (mem. op.); *Granger v. Granger*, 236 S.W.3d 852, 855–56 (Tex. App.—Tyler 2007, pet. denied).

---

[5]Appellant's brief erroneously states that the appropriate standard of review on this issue is de novo. However, the de novo standard applies only to the question of whether a mediated settlement agreement complies with the requirements set forth in the Texas Family Code, not a trial court's decision regarding whether to set aside such an agreement. *See, e.g.*, *Choksi v. Choksi*, No. 09-19-00183-CV, 2020 WL 6787410, at *3 (Tex. App.—Beaumont Nov. 19, 2020, pet. denied) (mem. op.).

## IV. Discussion

While the overarching issue in this appeal is whether the trial court abused its discretion by deciding not to set aside the MSA, reaching a decision on this ultimate question necessarily involves the resolution of three sub-issues:

1. Did Husband properly preserve his claim that the trial court erred in excluding testimony regarding the matters set forth in the affidavit?

2. Did the trial court err in excluding testimony regarding the matters set forth in the affidavit on the grounds that it would violate the attorney–client privilege?

3. If the trial court's evidentiary ruling was erroneous, was this error harmful?

We will address each of these issues in turn.

### 1. Did Husband Preserve His Claim of Error on the Evidentiary Ruling?

As a threshold matter, we must determine whether Husband properly preserved his claim that the trial court abused its discretion in excluding testimony regarding the matters set forth in the affidavit attached to his motion to set aside the MSA.

In her brief, Wife asserts that Husband forfeited the issue by failing to object or make an offer of proof during the hearing on the motion. As the ruling in question involves the exclusion—not the admission—of evidence, an objection alone is ordinarily insufficient to preserve a claim of error. *See* Tex. R. Evid. 103(a). Rather, to preserve a claim of error based upon the exclusion of evidence, a party must make

6

an offer of proof unless the substance is apparent from the context. Tex. R. Evid. 103(a)(2). "The primary purpose of an offer of proof is to enable the appellate court to determine whether the exclusion was erroneous and harmful. A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence." *In re L.L.J.*, Nos. 02-14-00407-CV, 02-14-00408-CV, 2015 WL 5634111, at *1 (Tex. App.—Fort Worth Sept. 24, 2015, no pet.) (mem. op.) (citations omitted).

We hold that Husband preserved his claim of error regarding the trial court's exclusion of his testimony.[6] The affidavit attached to the motion informed the trial court of the substance of Husband's duress complaint, and the trial court's statements on the record suggest that he had reviewed the affidavit and was familiar with its contents.[7] Thus, when he made his ruling, the trial judge was aware of the subject matter of Husband's intended testimony. Given the totality of the circumstances and assuming that the content of Husband's excluded testimony would have been, in all

---

[6]We emphasize the narrowness of this ruling. The best practice would have been for Husband's counsel to make a formal offer of proof after the trial court sustained Moghadassi's objection or, failing that, to have filed a formal bill of exception. *See* Tex. R. App. P. 33.2; Tex. R. Evid. 103(a)(2). However, given the context of the trial court's evidentiary ruling and Husband's trial counsel's reasonable interpretation that this ruling would have precluded her from making an offer of proof, we conclude that, on these specific facts, the issue has been preserved. *Cf. First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221–22 (Tex. 2017) ("We generally hesitate to turn away claims based on waiver or failure to preserve the issue.").

[7]The trial court, in addressing Moghadassi's objection on the grounds of attorney–client privilege, noted that the "information or advice that you've given him . . . is somewhat the crux of what we're here to talk about today, as to whether that information rose to some other level."

meaningful respects, identical to that of the affidavit,[8] the substance was apparent from the context, and the claim of error was preserved. *See Turner v. Peril*, 50 S.W.3d 742, 745 (Tex. App.—Dallas 2001, pet. denied) (op. on reh'g) (concluding affidavits satisfied Tex. R. Evid. 103(a)(2) where they were offered, the substance was known to the trial court, and they appeared in the clerk's record); *see also Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied) (addressing the merits of appellant's point of error regarding excluded expert testimony even though appellant had not presented an offer of proof where discussion on the record suggested that the trial court was aware of the substance of expert's intended testimony).

## 2. Was the Exclusion of Husband's Testimony Erroneous?

The trial court excluded Husband's testimony regarding his interactions with Moghadassi at the mediation on the grounds that such testimony would violate the

---

[8]In her brief, Wife correctly asserts that "Husband's affidavit, by its nature, can do no more than reflect Husband's intended testimony" and that it cannot provide any insight into how Moghadassi might have testified had the trial court overruled his objection based on attorney–client privilege. However, a formal offer of proof would have suffered from the same limitation. Here, we are concerned with the trial court's exclusion of Husband's testimony, not any potentially conflicting evidence from Moghadassi. However, if Husband had been allowed to testify regarding the matters set forth in his affidavit, Moghadassi should certainly have been afforded the opportunity to present his version of events. *Cf. Joseph v. State*, 3 S.W.3d 627, 637 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("The privilege is not an inviolable seal upon the attorney's lips. . . . [W]here . . . the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue." (quoting *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967))).

8

attorney–client privilege.    We hold that the trial court erred in excluding this testimony.

It is well settled that the attorney–client privilege belongs to the client, not the attorney, and can be invoked only on the client's behalf.  *See* Tex. R. Evid. 503(b)–(c); *West v. Solito*, 563 S.W.2d 240, 244 n.2 (Tex. 1978) (orig. proceeding); *In re Guardianship of Benavides*, No. 04-13-00196-CV, 2014 WL 1494606, at *3 (Tex. App.—San Antonio Apr. 16, 2014, no pet.) (mem. op.); *Bearden v. Boone*, 693 S.W.2d 25, 27 (Tex. App.—Amarillo 1985, orig. proceeding).  An attorney may not assert the privilege in his own capacity.  *Benavides*, 2014 WL 1494606, at *3 (citing *Cole v. Gabriel*, 822 S.W.2d 296, 296 (Tex. App.—Fort Worth 1991, orig. proceeding) (op. on reh'g)); *Turner v. Montgomery*, 836 S.W.2d 848, 850 (Tex. App.—Houston [1st Dist.] 1992, orig. proceeding) ("An attorney cannot claim the privilege to protect himself . . . .").  While an attorney can assert (or waive) the privilege on behalf of a client or former client, he may do so only when acting under the client's authority.  *See Burnett v. State*, 642 S.W.2d 765, 770 (Tex. Crim. App. 1982) ("Since . . . it is the client who is the holder of the privilege, the power to waive it is his, and he alone, or his attorney or agent *acting with his authority*, may exercise this power."); 81 Am. Jur. 2d *Witnesses* § 325 ("The attorney–client privilege may be claimed either by the client or the attorney, but the attorney's authority to claim the privilege . . . is only on behalf of the client." (footnotes omitted)).

In this case, it was Moghadassi, not Husband, who asserted the attorney–client privilege at the hearing on the motion. However, by this time, Moghadassi no longer represented Husband, who had retained new counsel. In fact, when Moghadassi asserted the privilege, he and Husband were adverse parties—not only had Moghadassi filed the fee petition, in which he sought a judgment against Husband for unpaid attorney's fees, but he had also filed a response opposing the relief sought in Husband's motion to set aside the MSA. In this context, Moghadassi's invocation of the privilege was not merely unauthorized but was directly in conflict with Husband's legal objectives, not to mention Husband's evident desire to testify in support of his motion. While there is a presumption under Rule 503 that a former attorney has authority to assert the privilege on the client's behalf, this presumption is overcome by the facts and circumstances surrounding the assertion of the privilege in this case. Tex. R. Evid. 503(c). Given Husband's and Moghadassi's diametrically opposed interests at the hearing, one cannot reasonably conclude that Moghadassi's invocation of the privilege was "on behalf of" Husband or with Husband's authority. Rather, under these facts, it appears that Moghadassi invoked the privilege to protect himself, which, as stated above, is impermissible. *See Turner*, 836 S.W.2d at 850.

Permitting an attorney to use the attorney–client privilege offensively against a former client to curtail the presentation of evidence that might be detrimental, unflattering, or embarrassing to the attorney would turn the privilege on its head. The privilege exists for the protection of *the client*, not the attorney. *See id.* (holding an

10

attorney cannot claim the privilege to protect himself); *see also Carmona v. State*, 941 S.W.2d 949, 953 (Tex. Crim. App. 1997). Thus, allowing an attorney to use the privilege in the manner in which Moghadassi employed it in this case would run counter to its purpose.

As the holder of the privilege, Husband had the right to waive it if he so chose. *See Burnett*, 642 S.W.2d at 770; *see also U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (recognizing "the bedrock principle that the attorney–client privilege is the client's and his alone" and "[i]f the client wishes to waive it, the attorney may not assert it, either for the client's or for his own benefit"). Indeed, Husband arguably did so by filing the motion to set aside the MSA in which he based his claim of duress in large part on the conduct and communications of Moghadassi, his former counsel, at the mediation. *See Bailey v. State*, 469 S.W.3d 762, 774–75 (Tex. App.—Houston [1st Dist.] 2015) (en banc op. on reh'g) (recognizing that the privilege regarding attorney–client communications may be implicitly waived by raising issues regarding the performance of counsel), *aff'd*, 507 S.W.3d 740 (Tex. Crim. App. 2016); *see also* Tex. R. Evid. 503(d)(3) (stating no privilege exists as to communication relevant to issue of breach of duty by lawyer to client or by client to lawyer); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("There is authority for the proposition that a party can waive the attorney[–]client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation."); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994) ("The great weight of

11

authority holds that the attorney–client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit . . . ." (quoting *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989))). Even if the filing of the motion in and of itself did not waive the privilege, the filing of the affidavit could be considered to have effectuated such a waiver concerning the specific matters set forth therein. *See* Tex. R. Evid. 511(a)(1); *Tex. Tech Univ. Health Scis. Ctr. – El Paso v. Niehay*, 641 S.W.3d 761, 789 (Tex. App.—El Paso 2022, pet. filed) (per curiam) ("The attorney–client privilege is waived when the holder of the privilege voluntarily discloses the privileged material to a third party."); *see also Rowe Int'l Corp. v. Ecast, Inc.*, 241 F.R.D. 296, 301 (N.D. Ill. 2007) (mem. op.) (holding that by knowingly allowing deposition testimony containing privileged information to become part of a public record, party waived his right to later assert the privilege). As the affidavit had already become part of the trial court's record, preventing Husband from testifying about its contents to preserve the attorney–client privilege was tantamount to closing the barn door after the horse had already bolted.

In sum, because (1) the attorney–client privilege belonged to Husband, (2) he had the right to waive it (and arguably already had), and (3) Moghadassi, as an adverse party, did not have authority to assert the privilege on Husband's behalf, the trial court abused its discretion in excluding Husband's testimony.

## 3. Was the Error Harmful?

As noted above, we will not reverse a judgment based on the erroneous admission or exclusion of evidence unless it can be shown that the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a); *Able*, 35 S.W.3d at 617; *Ledbetter*, 12 S.W.3d at 142. To meet this burden, an appellant ordinarily must show that the judgment turns on the excluded evidence. *Ledbetter*, 12 S.W.3d at 142. Thus, here, we will reverse the trial court's decision only if we determine that but for the trial court's error, Husband likely could have successfully established a claim of duress that would justify setting aside the MSA.

### A. The Law Concerning MSAs

Section 6.602 of the Texas Family Code provides that a mediated settlement agreement that meets certain statutory requirements "is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) (citing Tex. Fam. Code Ann. § 6.602(b)–(c)).[9] "Unlike other settlement agreements in family law, the trial court is not required

---

[9]In relevant part, the statute provides as follows:

(b) A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

to determine if the property division is 'just and right' before approving an MSA." *Id.* (citing *In re Marriage of Joyner*, 196 S.W.3d 883, 889, 891 (Tex. App.—Texarkana 2006, pet. denied)). An MSA is also unique in that, unlike an ordinary settlement agreement which can be revoked by either party before the court renders judgment on it, an MSA that complies with Section 6.602 is irrevocable once signed. *Id.*

The Texas Supreme Court has declined to address whether, despite the language of Section 6.602(c), a court may nevertheless set aside an MSA that complies with the statutory formalities on the grounds that it is illegal or was procured by fraud, duress, or coercion. *Id.* at 619 (noting that the court was "leav[ing] the applicability of those defenses for another case"); *see also Highsmith v. Highsmith*, 587 S.W.3d 771, 777 n.5 (Tex. 2019) ("As in *Milner*, we need not and do not address whether an MSA that complies with the statutory formalities may nevertheless be set aside on the ground that it is illegal or was procured by fraud, duress, or coercion."). However, like many of our sister courts, we have previously held that a trial court is not required to enforce an MSA that complies with the statutory requirements if it is illegal or was

---

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(c) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

Tex. Fam. Code Ann. § 6.602(b)–(c).

14

procured by fraud, duress, or coercion. *Boyd v. Boyd*, 67 S.W.3d 398, 403–05 (Tex. App.—Fort Worth 2002, no pet.). *Accord Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.—El Paso 2010, no pet.); *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 242 (Tex. App.—Austin 2007, pet. denied); *Joyner*, 196 S.W.3d at 890; *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (op. on reh'g); *cf. Choksi*, 2020 WL 6787410, at *4 (assuming without deciding that duress is an available defense to the enforcement of an MSA).

The MSA in this case appears to comply with the provisions of Section 6.602, and neither party contends otherwise. Accordingly, absent a defense to the MSA that makes it unenforceable, the trial court had no choice but to render a decree consistent with the MSA's terms. *See* Tex. Fam. Code Ann. § 6.602(c); *Milner*, 361 S.W.3d at 618–19.

## B. Duress

Husband contends that the MSA should be set aside because it was procured by duress. While there are several different types of duress, "[a] common element of duress in all its forms . . . is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Dall. Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878–79 (Tex. 2005). The threat must be "actual and imminent," not merely "feigned or imagined." *Id.* at 879. A claim of duress "must be established based on the conduct of the party accused of duress, not the emotions of the purported victim." *Weinberg v.*

15

*Baharav*, 553 S.W.3d 131, 134 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Parks v. Affiliated Bank*, No. 05-16-00784-CV, 2018 WL 2057545, at \*5 (Tex. App.—Dallas May 3, 2018, pet. denied) (mem. op.)).  It is well settled that a claim of duress must be based on the conduct of the other party to the contract.[10]  *See Dimmitt v. Robbins*, 74 Tex. 441, 446, 12 S.W. 94, 97 (1889); *Choksi*, 2020 WL 6787410, at \*5; *Weinberg*, 553 S.W.3d at 134; *Burck*, 225 S.W.3d at 302; *Kosowska v. Khan*, 929 S.W.2d 505, 508 (Tex. App.—San Antonio 1996, writ denied); *Marriage of Banks*, 887 S.W.2d at 163–64; *King v. Bishop*, 879 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.] 1994, no writ).  "Courts will not invalidate contracts on grounds of duress when the

---

[10]Husband's attempts to dispute this settled principle of contract law are unpersuasive.  *See* Appellant's Reply Brief, pp. 4–5.  First, the language Husband cites from this court's opinion in *In re D.E.H.*, 301 S.W.3d 825, 829 (Tex. App.—Fort Worth 2009, pet. denied) (en banc op. on reh'g), that duress occurs when a person is incapable of exercising her free agency "due to some kind of threat" does not conflict with the settled principle that duress must arise from the conduct of the other party to the contract.  The quoted language from *In re D.E.H.* is silent regarding whether the "threat" must originate from the opposing party.  Indeed, this question was not squarely at issue in *In re D.E.H.* as appellant had contended that she "was placed under great duress *by other parties to the suit*."  *Id.* at 827 (emphasis added).  Second, the language Husband quotes from *Kalyanaram v. Burck* is equally unconvincing.  *Kalyanaram v. Burck*, 225 S.W.3d 291, 302 (Tex. App.—El Paso, 2006, no pet.).  The passage quoted by Husband contains the *Burck* court's analysis of whether opposing counsel's statements during a deposition rose to the level of duress.  *Id.*  As a party's attorney would be someone for whom the party is responsible, the court's analysis was consistent with the principle that duress must be based on the conduct of the opposing party.  *Cf. In re Marriage of Banks*, 887 S.W.2d 160, 163–64 (Tex. App.—Texarkana 1994, no writ) (holding appellant had no valid claim of duress where there was no allegation of misconduct by the opposing party "or anyone for whom he is responsible," including his attorney).

16

alleged duress derives from a third person who has no involvement with the opposite party to the contract." *Burck*, 225 S.W.3d at 302.

Here, Husband's claim of duress is based entirely on the conduct and statements of Moghadassi and the mediator, not Wife or her counsel. Indeed, Husband admitted on the record that he felt no duress from Wife—the only other party to the MSA—during the mediation process. Thus, even accepting all of Husband's allegations in the affidavit as true,[11] Husband cannot establish a valid claim of duress. *See Weinberg*, 553 S.W.3d at 134; *Burck*, 225 S.W.3d at 302.

Moreover, even if a valid claim of duress could be based upon the conduct of nonparties, Husband's claim of duress would still fail. In general terms, Husband bases his claim of duress on his allegations (1) that Moghadassi coerced him to sign the MSA by, *inter alia*, urging him in a "loud voice" to sign it and threatening to withdraw as Husband's attorney if he did not do so and (2) that the mediator likewise pressured him to sign the MSA by, *inter alia*, pointing out that juries in Tarrant County "would not be diverse," which Husband took to mean that he would likely lose at trial.[12] While the actions and statements complained of by Husband might have caused him to feel pressure to sign the MSA, none of Husband's allegations describe

---

[11]We note that Moghadassi disputed Husband's factual allegations, and if the trial court had allowed Husband to testify, Moghadassi should have been granted the opportunity to rebut Husband's testimony. *See supra* note 8.

[12]Husband also alleges that he felt time pressured by Moghadassi's statements that Husband was taking too long and intimidated by the mediator's comments that she was married to a police officer and that the trial judge was a military retiree.

any action that Moghadassi or the mediator lacked the legal right to take. *See Osorno v. Osorno*, 76 S.W.3d 509, 511 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("For duress to be a contract defense, it must consist of a threat to do something the threatening party has no legal right to do."). Indeed, it is the job of a good mediator to point out to the parties the flaws in their respective cases and the risks that they face if they do not reach an agreement. *See Patnaude v. Sears Pest Control, Inc.*, No. 08-61980-CIV, 2009 WL 10667066, at *7 (S.D. Fla. June 1, 2009) ("[T]he Court notes that it is a mediator's function to apprise each party of the strengths and weaknesses of its claims and defenses, as well as the potential liability that a party exposes himself to if he chooses to continue to litigate."); *cf. Page v. Horel*, No. C-09-0289 EMC (pr), 2011 WL 5117562, at *6 (N.D. Cal. Oct. 28, 2011) (concluding there was no duress where a mediator pointed out weaknesses in a party's case and strengths in the opponent's case as this is a "routine technique used to facilitate settlement" and does not constitute duress). Without any perceived litigation risks, parties would have little incentive to settle. Similarly, an attorney and client may sometimes disagree on what course of action is in the client's best interests. In such instances, an attorney may zealously attempt to persuade the client to do something he does not want to do. Not even Moghadassi's threat to withdraw as counsel rises to the level of duress because Husband could have protected himself by seeking replacement counsel and attempting to reschedule the mediation. *See Creative Mfg. v. Unik, Inc.*, 726 S.W.2d 207, 211–12 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.) (finding no duress where

18

defendant, whose attorney had withdrawn before trial, could have protected itself by requesting continuance of trial rather than entering into license agreement to settle case). While Husband may have felt pressure from the alleged actions and statements of Moghadassi and the mediator, their alleged conduct does not rise to the level of duress. *See Weinberg*, 553 S.W.3d at 134 (noting that a claim of duress must be established by the conduct of the person accused of duress, not the emotions of the purported victim).

Because Husband's allegations as set forth in the motion and the affidavit—even if true—do not establish a valid claim of duress, the trial court's error in excluding his testimony did not cause the rendition of an improper judgment.

## V. Conclusion

While the trial court erred in excluding Husband's testimony, the error did not lead to the rendition of an improper judgment. We therefore affirm both the trial court's order denying the motion and the divorce decree rendered on the binding MSA. *See* Tex. R. App. P. 43.2(a).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 11, 2022

19