# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00645-CV

### In the Interest of A. P.; C. O., III; R. O.; M. O.; and M. O.

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 202,881-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Janet Osborne appeals from a decree based on a jury verdict terminating her parental rights to four children, C. O., III; R. O.; M. O.; and M. O. In her sole issue on appeal, Osborne contends that the trial court abused its discretion in refusing to strike two expert witnesses whom the Texas Department of Family and Protective Services did not properly disclose in response to her disclosure requests under Texas Rule of Civil Procedure 194. We will affirm.

## BACKGROUND

Osborne is the mother of the five children who were the subject of the proceedings below: then seven-year-old A. P., five-year-old C. O., III; four-year-old R. O.; two-year-old M. O.; and six-month-old M. O. The case was tried to a jury before an associate judge. The jury heard evidence that, among other things:

- The proceedings were initiated after a passing motorist noticed one of Osborne's children, wearing only a diaper and t-shirt on a cool and rainy day, standing alone in tall grass near a roadway.

- Law enforcement investigated. Discerning that the child had come from Osborne's house, officers investigated and discovered what they characterized as "nasty," a "dump yard," and among the worst houses they had ever seen. One officer recounted that "there was rotted meat, feces all over, dirty diapers all over," food with "green mold, fungus all over it," a tub-like object "like a baby washer" in the middle of the living room "filled up halfway with milk and cereal in there almost like it was a feeding bin or something," and a bathtub filled with between two to four inches of brown, stagnant water that "looked like it had been there for weeks to a month."

- Another officer testified that he found, in the living room, "a butcher knife that was just laying on the floor accessible to kids in the house" and, in one of the bedrooms, a "crack pipe." Osborne later indicated that the pipe belonged to her husband, Charles.

- In the back of the house, an infant was found on a bed, wrapped in a blanket with a bottle still in its mouth. No adults or older children were present in the house.

- While officers were investigating, Osborne and Charles Osborne arrived at the house. There was evidence that Osborne had left her children with a man, "J. B.," whom she had met only the previous day and whose surname she did not know, to go look for Charles, whom she found in a motel room using crack with another woman.

- At times, Osborne had left the children in the care of her mother, whom she knew used "weed" and ecstasy, and a friend who had hit one of the children in the face with a belt.

- There was evidence that Charles Osborne had sexually abused A. P., that A. P. had informed Osborne of the abuse, and that Osborne's sole response was to forbid Charles to be alone with A. P. A child therapist testified that this response was not "adequate protection" for A. P. and that an adequate parenting response would have been to put Charles out of the house and get therapy for A. P. Based on this and other events, the therapist opined that Osborne "was not able to be properly protective."

- The children's guardian ad litem testified that the children were doing very well in their foster care placements, "should remain under the conservatorship of the department and should be freed for adoption," and Osborne's parental rights terminated.

The trial court submitted a termination issue regarding the four youngest children with instructions regarding the statutory grounds of endangerment and violation of a court order. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (I) (West Supp. 2006). The jury found by clear and

2

convincing evidence that Osborne's parental rights to these children should be terminated.[1] The

district court adopted the associate judge's proposed decree based on the verdict.[2]

Osborne appeals the portions of the decree terminating her parental rights to C. O.,

III, R. O., M. O., and M. O. She does not challenge the sufficiency of the evidence supporting the

jury's termination finding. Rather, she brings a single issue complaining that the trial court

reversibly erred in failing to strike two of the department's witnesses: Dr. Michael Campbell, a

court-appointed psychologist who had performed a psychological examination on Osborne, and Ryan

Malsbary,[3] the department's caseworker assigned to the children.

Dr. Campbell was appointed by the trial court on March 24, 2004—within ten days

after the department filed its petition and the trial court first entered temporary orders removing the

children—to interview and evaluate Osborne to assist in determining the best interests of the children

by identifying any risk of harm she presented and "giving a professional opinion as to whether

rehabilitation efforts . . . can provide a safe and stable environment for the children in the home,"

---

[1] The trial court also submitted a termination issue regarding Charles Osborne, the father of the four youngest children, and the jury found that his parental rights to those children should be terminated. Regarding A. P., the trial court submitted issues regarding whether Janet Osborne, Rodney Johnson, the child's father, or the department should be named managing or possessory conservator. The jury found that Johnson should be named managing conservator and Osborne possessory conservator. The decree incorporates these findings, and they are not challenged in this appeal.

[2] The decree was adopted by the district court in September 2005. Due to delays in the filing of the record and the parties' briefs, this appeal was not ready for submission until December 2006.

[3] At least three different spellings of this name appear in the record, and a fourth is used in the appellate briefs filed by the parties. Malsbary did not identify the correct spelling in his trial testimony. The spelling above is that used in the documents prepared at trial by the department, Mr. Malsbary's employer.

3

considering Osborne's capacities for effective parenting, her "functional abilities" to meet the children's needs, her "personality factors . . . such as: motivation, concern for the child[ren], mental status, poor judgment," and "the need for and likely success of clinical interventions for observed problems." The trial court ordered that "a detailed written report of the examination" setting out Dr. Campbell's findings, including results of tests made, diagnoses, and conclusions be prepared by Dr. Campbell, provided to all parties, and filed with the court by May 31, 2004.

The record reflects that a copy of this report, dated April 28, 2004, was admitted into evidence in an August 18, 2004 permanency hearing. Osborne does not dispute having received a copy. In his report, Dr. Campbell listed the evaluation procedures he employed (reviewing the department's file concerning the children and family, a clinical interview, a mental status examination, and three objective tests: the Wide Range Achievement Test, Revised .3; the Wechsler Abbreviated Scale of Intelligence (WASI); and the Minnesota Multiphasic Personality Inventory-II (MMPI-2)). The report summarized Osborne's personal history and the history of the department's involvement with her children. The report then provided a detailed analysis of Osborne's examination, including explanations of the results of the various tests Dr. Campbell administered. Finally, the report provided Dr. Campbell's summary and conclusions. Dr. Campbell stated that Osborne "does not accept responsibility for the wrongdoing in her life," "was dysthymic and apprehensive throughout the evaluation," and had intelligence "in the Low Average range of intellectual functioning."

In specific response to the issues presented by the trial court, Dr. Campbell opined that Osborne's "capacity for effective parenting is poor," noting that she had "repeatedly allowed her

4

home to become a safety hazard for her children" and allowed drug users and persons she barely knew to care for her children yet "admits to no wrongdoing." Dr. Campbell concluded that "[t]here is concern for future neglect . . . due to a tendency to allow dangerous individuals around the children, her dependency on men for decision-making, and her inability to maintain cleanliness and safety in her home." Dr. Campbell also opined that Osborne's "motivation to meet her children's needs and to build a positive, fulfilling relationship with them is poor," noting that "[s]he is an individual to whom forming relationships and attachment to males is more important than building relationships with her children." Campbell diagnosed Osborne with, among other things, dependant personality disorder ("a pervasive and excessive need to be taken care of that leads to submissive and clinging behavior and fears of separation"). He opined that for any therapeutic intervention to be successful, Osborne would have to "take responsibility in making decisions and setting goals," "understanding and accepting responsibility for her neglectful and abusive behaviors," and learn "how to deal with stressful situations without . . . depending on men to make decisions for her."

Several months later, in June 2005, Osborne served on the department requests for disclosure, requesting the information specified in Texas Rule of Civil Procedure 194.2. The department responded. Regarding rule 194.2(f), concerning testifying experts, the department provided the "name, address, and telephone number" of several experts, *see* Tex. R. Civ. P. 194.2(f)(1), including Dr. Campbell and Ryan Malsbary, plus a brief statement of each witness's connection to the case: Campbell had "conducted a psychological evaluation of . . . Janet Osborne," and Malsbary was "the current caseworker for the children." But the department did not otherwise

purport to provide the information required by subparts 2, 3, and 4 of rule 194.2(f), including "the subject matter on which the expert will testify," "the general substance of the expert's mental impressions and opinions and a brief summary of the bases for them," or "all documents, tangible things, reports, models, or data compilations that have been reviewed by or prepared by or for the expert in anticipation of the expert's testimony." *See id*. 194.2(f)(2)-(4).

On August 24, Osborne moved to strike several of the experts designated in the department's disclosure responses—including Malsbary, but not Dr. Campbell—on grounds that the department had not "disclosed the general substance of . . . each expert's mental impressions and opinions and a brief summary of the basis for them." *See id*. 194.2(f)(3). Also, with regard to Malsbary, Osborne contended that the department had failed to provide a curriculum vitae or resume. *See id*. 194.2(f)(4)(B). In a separate motion filed the same day, Osborne sought to strike Dr. Campbell's psychological report as unreliable and unfairly prejudicial. *See* Tex. R. Evid. 702. Following an August 26 hearing, the court overruled both motions.

The jury trial commenced on August 29, 2005. On August 30, prior to Dr. Campbell testifying, Osborne objected to his testimony on the basis that the department had failed to disclose, in compliance with rule 194, the general substance of Campbell's mental impressions and opinions and a brief summary of the basis for them, *see* Tex. R. Civ. P. 194.2(f)(3), or all documents, tangible things, reports, or data compilations that had been provided to, reviewed by, or prepared by or for Dr. Campbell in anticipation of his testimony. *See id.* 194.2(f)(4)(A). In response, the department argued that the psychological report and the records on which Dr. Campbell would have relied had,

6

in fact, been provided to Osborne.[4] The trial court overruled Osborne's objection without specifying the legal basis for its ruling, and Dr. Campbell proceeded to testify. A redacted version of Dr. Campbell's report, excluding portions that the district court deemed inadmissible because they referenced Osborne's "unfounded drug use," was admitted into evidence. Dr. Campbell's trial testimony was based largely on his psychological report, reiterating his opinions and observations. On direct examination, he was asked to explain behaviors and events previously introduced through other witnesses in terms of the psychological observations and opinions in his report.

Before Malsbary testified, Osborne reurged her rule 194 objection to his testimony, reiterating that the department had failed to provide his curriculum vitae or resume. *See id*. 194.2(f)(4)(B). Additionally, Osborne objected that Malsbary was not "an expert in the area of anything dealing with child custody or dealing with termination." The department responded that it was not planning on offering Malsbary as an expert witness.[5] The trial court ruled that it would "not allow him to testify as an expert" but clarified that it would allow Malsbary "to testify as to what he believes is in the interest of a child" and "as to adoption mechanisms within the department." Malsbary then proceeded to testify. Among other things, he explained the procedures involved in attempting to achieve the department's goal of "family reunification," if such reunification is possible. Malsbary explained that Osborne had not complied with all of the

---

[4] The department also argued that Osborne had waived her objection by not asserting it until trial.

[5] Malsbary had also been designated in the department's disclosure responses as a person with knowledge of relevant facts and again identified as "the current caseworker for the children." *See* Tex. R. Civ. P. 194.2(e).

7

department's services for achieving reunification but had complied with some. Finally, Malsbary testified as to the "adoptability" of the children—in other words, how likely it was that they would be adopted. Malsbary testified that he believed there was no reason why "these kids could not be easily adopted."

## DISCUSSION

We review a trial court's ruling to admit or exclude evidence based on the discovery rules for abuse of discretion. *State v. Target Corp.*, 194 S.W.3d 46, 49 (Tex. App.—Waco 2006, no pet.). A trial court abuses its discretion when it rules on the admissibility of evidence in an arbitrary or unreasonable manner or without reference to guiding legal principles or rules. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We must uphold a trial court's evidentiary ruling if there is any legitimate basis in the record to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 650 (Tex. App.—Austin 2005, pet. denied).

Our disposition of Osborne's issue turns on two rules of civil procedure. Rule 194 provides, in relevant part:

A party may request disclosure of any or all of the following:

. . . .

(f) for any testifying expert:

(1) the expert's name, address, and telephone number;

(2) the subject matter on which the expert will testify;

8

(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

(4) if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

> (A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

> (B) the expert's current resume and bibliography;

Tex. R. Civ. P. 194.2. The department does not dispute that both Dr. Campbell and Malsbary were "retained by, employed by, or otherwise subject to the control of" the department, obligating it to provide the information specified in 194.2(f)(4), so we will assume so.

A party must respond to written discovery, including requests for disclosure under rule 194, in writing within the time provided by court order or the discovery rules. Tex. R. Civ. P. 193.1. When responding to written discovery, a party must make a complete response, based on all information reasonably available to the responding party or its attorney at the time the response is made. *Id*. If a party learns that its response to written discovery was incomplete or incorrect when made, the party must amend or supplement the response. Tex. R. Civ. P. 193.5.

The consequences for failing to timely respond to written discovery are governed by rule 193.6:

> (a) *Exclusion of evidence and exceptions*. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of

a witness (other than a named party) who was not timely identified, unless the court finds that:

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

(b) *Burden of establishing exception.* The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

Tex. R. Civ. P. 193.6. Rule 193.6 provides an alternative to the "draconian sanction of automatic exclusion under former Rule 215(5), which required a showing of good cause." *Target Corp.*, 194 S.W.3d at 50. The additional exceptions for lack of unfair surprise or unfair prejudice "reduce[] the burden" on a party who is seeking to introduce a witness. *Elliott v. Elliott*, 21 S.W.3d 913, 921 n.7 (Tex. App.—Fort Worth 2000, pet. denied).[6]

Osborne urges that the trial court abused its discretion in failing to exclude Dr. Campbell (both his testimony and his report) and Malsbary under rule 193 because the department failed to properly respond to her rule 194 disclosure requests. We can quickly dispose of her complaint regarding Malsbary. As previously noted, the trial court did not permit Malsbary to testify

---

[6] Furthermore, exclusion is no longer the only remedy, as rule 193.6 also states that even if the party seeking to introduce the evidence or call the witness fails to carry its burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response. Tex. R. Civ. P. 193.6(c).

as an expert; thus, the requirements of rule 194.2(f) are not implicated. Osborne does not present any other ground for excluding Malsbary as a witness, and we hold that the trial court did not abuse its discretion in permitting him to testify.

Regarding Dr. Campbell, Osborne emphasizes that the department, at least within the four corners of its disclosure responses, did not provide the general substance of his "mental impressions and opinions and a brief summary of the basis for them," as required by rule 194.2(f)(3), nor produce "all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by" Dr. Campbell in anticipation of his testimony, as required by rule 194.2(f)(4)(A). Standing alone, the department's responses would constitute a "complete failure to respond to discovery" regarding the information required under rule 194.2(f)(3) or (4). *See VingCard A.S. v. Merrimac Hospitality Sys.*, 59 S.W.3d 847, 855-56 (Tex. App.—Fort Worth 2001, pet. denied) (responding party provided only expert's name and subject matter of testimony). Such failure, absent a showing of good cause or lack of unfair surprise or unfair prejudice, would trigger the automatic exclusion sanctions of rule 193.6. *Id.* at 856.[7]

In response, the department contends that Osborne was not unfairly surprised or prejudiced because Osborne had already received, many months earlier, the information required under rule 194.2(f)(3) and (4) in the form of Dr. Campbell's report and the department's file

---

[7] And a complaint that a party has completely failed to respond to a discovery request, as contrasted with a complaint that discovery responses are merely inadequate, may be preserved by objection at trial. *VingCard A.S. v. Merrimac Hospitality Sys.*, 59 S.W.3d 847, 856-57 (Tex. App.—Fort Worth 2001, pet. denied). Perhaps for this reason, the department has not urged on appeal the waiver argument it asserted at trial.

11

concerning the family. *See* Tex. R. Civ. P. 193.6(a)(2). It equates this case with *In re W.D.W.*, 173 S.W.3d 607, 614-15 (Tex. App.—Dallas 2005, no pet.). *W.D.W.* was a parental termination case. The parents sought to exclude a neuropsychologist who had examined the child and prepared a report based on the department's failure to make full disclosures concerning the expert under rule 194. To satisfy its obligations under rule 194.2(f)(3) and (4), the department cross-referenced a "Child Protective Services Case file previously provided." *Id*. at 614-15. Distinguishing the case from *VingCard*, the court stated that "the Department showed that Dr. Harrison's report containing the general substance of his mental impressions and opinions and summary of the basis for those opinions had previously been produced to Mother and Father in discovery." *Id.* It also observed that the father had admitted during oral argument that Dr. Harrison's report was sufficient to comply with rule 194 and that he was not surprised. *Id.* at 615. Even if the report had not complied with rule 194, moreover, the court found a lack of prejudice because neither parent had objected to the introduction of the report, which had contained the same opinions offered in his testimony, and that both had the opportunity to prepare expert opinion in rebuttal. *Id.*

Osborne points out that the department did not (at least in so many words) request the trial court to find good cause or lack of unfair surprise or prejudice, nor did the trial court explicitly make any such findings. Alternatively, while not appearing to dispute that Dr. Campbell's report would constitute a sufficient summary of the general substance of his mental impressions and their bases, *see* Tex. R. Civ. P. 194.2(f)(3), Osborne urges that the department's prior production of the report and its file on her did not discharge its obligation to produce "*all* documents, tangible

12

things, reports, models, or data compilations" provided to or reviewed by Dr. Campbell. *See id.* 194.2(f)(4) (emphasis added). Osborne claims that this alleged failure prevented her from challenging the reliability of the opinions Campbell expressed in the report and at trial, emphasizing that a portion of the department's history on Osborne provided to Campbell included drug use allegations that the trial court later excluded as unfounded.

We agree with the department that the trial court did not abuse its discretion in permitting Dr. Campbell to testify. At trial, the department argued, in substance, that Dr. Campbell should be permitted to testify because Osborne could not have been surprised or prejudiced where she had previously received copies of his report and the department's file. Osborne does not dispute that she received these documents. A finding of good cause or the lack of unfair surprise or unfair prejudice must be supported by the record. *Id*. 193.6(b). However, such a finding may be implied from the trial court's ruling permitting the witness to testify. *See, e.g.*, *Brunelle v. TXVT, Ltd. P'ship*, 198 S.W.3d 476, 479 (Tex. App.—Dallas 2006, no pet. h.); *Parker Plaza West, Ltd. v. Boniuk Invs., Ltd.*, 153 S.W.3d 729, 734 (Tex. App.—Dallas 2005, no pet.); *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 384 (Tex. App.—Dallas 2003, pet. denied); *Capital Metro. Transp. Auth. v. Ctr. of Tenn. Ry. and Navigation Co.*, 114 S.W.3d 573, 583 (Tex. App.—Austin 2003, pet. denied); *Wal-Mart Stores, Inc. v. Tinsley*, 998 S.W.2d 664, 671 (Tex. App.—Texarkana 1999, pet. denied).[8] On this record, the trial court did not abuse its discretion in impliedly finding

---

[8] *See also De La Rosa v. St. John*, No. 03-99-00282-CV, 2000 Tex. App. LEXIS 1371, at *6 (Tex. App.—Austin March 2, 2000, no pet.).

that the department had demonstrated that Osborne would not be unfairly surprised or prejudiced by Dr. Campbell's testimony.

As in *W.D.W.*, Osborne had previously received a copy of Dr. Campbell's report—months earlier—as well as the department's file on her children. *See W.D.W.*, 173 S.W.3d at 614-15. Campbell's trial testimony was consistent with the opinions stated in his report. *See id.* at 615. The record also reflects that the report and file previously provided to Osborne enabled her counsel to challenge the reliability of Dr. Campbell's opinions on grounds that they were predicated upon unfounded allegations of drug use, including extensive voir dire of Dr. Campbell regarding the extent to which Campbell had relied upon those allegations. Dr. Campbell explained that such background facts or allegations were merely a starting point for his clinical interview, that Osborne had denied drug use, and that the department's mention of possible drug use had not impacted his opinions.

The trial court did not abuse its discretion in allowing Dr. Campbell to testify and in admitting his report. Alternatively, even if it did, we are not convinced that any such error was harmful. We will not reverse a judgment based on an improper evidentiary ruling unless the error "probably resulted in an improper judgment." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *Beard Family P'ship v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 849 (Tex. App.—Austin 2003, no pet.). To prevail, the complaining party must demonstrate that "the judgment turns on the particular evidence excluded or admitted." *Alvarado*, 897 S.W.2d at 753-54. We review the entire record to determine whether a party has met this burden. *Id.* at 754. Osborne has not met this burden.

14

Under the district court's charge, in order to terminate Osborne's parental rights, the department was required to prove by clear and convincing evidence (1) at least one of the three submitted statutory termination grounds and (2) that it was in the children's best interest to terminate the parent-child relationship. The court's charge instructed the jury regarding factors it was to consider in determining best interest, including the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future; the parenting ability of the individuals seeking custody, the programs available to assist those individuals to promote the best interest of the children, the plans for the children of those individuals or by the agency seeking custody, the stability of the home or proposed placement, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Dr. Campbell's testimony was relevant to the best interest factor.

Osborne has not met her burden of demonstrating that the jury's best-interest determination probably turned on Dr. Campbell's testimony and report. As previously noted, the jury heard testimony from other witnesses that Osborne had allowed her house to become a "safety hazard" to the children; that Osborne had left her children, including a six-month-old infant, either unattended or under the care of virtual strangers or others presenting a risk of harm to the children; and that Osborne took inadequate steps to protect her seven-year-old daughter from her husband's sexual abuse. Additionally, the jury heard evidence from the children's guardian ad litem that the

15

children's current placements were going "very well" and that Osborne's parental rights should be terminated. This was not a close case. Any error in the admission of Dr. Campbell's testimony was harmless.

We overrule Osborne's sole issue on appeal.

## CONCLUSION

Having overruled Osborne's issue on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: February 1, 2007

16