**Affirmed and Memorandum Opinion filed April 2, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00029-CV
_____


**DARLENE SPARKS, Appellant**

**V.**

**EXXON MOBIL CORPORATION, Appellee**

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 06-DCV-151073**

## MEMORANDUM OPINION

Appellant, Darlene Sparks, appeals a take-nothing judgment pursuant to a jury verdict in her slip-and-fall personal injury suit against appellee, Exxon Mobil Corporation ("Exxon"). Sparks contends (1) the trial court erred by submitting a

jury question that included an inquiry regarding Sparks's alleged negligence, (2) the evidence is legally and factually insufficient to support the jury's finding that Sparks was negligent and Exxon was not liable for her injury, and (3) the trial court erred by admitting certain evidence. We affirm.

## I. BACKGROUND

Sparks and her sister, Linda Dyson, collectively presented the following testimony regarding the incident at issue. On August 21, 2004, Sparks drove her Yukon Sport Utility Vehicle up to a gas pump at an Exxon station in Sugar Land, Texas. Dyson was a passenger in the vehicle. Sparks slipped on a "greasy" substance when she stepped from the vehicle onto the ground. Sparks fell and struck her elbow and lower back on the elevated pavement where the gas pump was located. Dyson exited the vehicle when she heard Sparks scream. Dyson also slipped on the substance, which was on the ground in such a wide swath that it extended to the passenger's side of the vehicle, but Dyson maintained her footing and went to assist Sparks. There were no warning signs or cones around the substance when they drove up to the pump. They did not notice the substance before exiting the vehicle because they did not look at the ground. After the fall, they went inside the store and asked to speak with the manager. The clerk led them to an office where they spoke with a man whom they characterized as the station manager. Sparks did not recall the details of the conversation; however, Dyson testified the manager seemed unconcerned about Sparks's injury and stated that he knew "there was something out there" but he had not had time to clean the substance.

In contrast, Exxon presented the following testimony of Benjamin Villareal, station manager at the time of the incident. Villareal had been employed by Exxon

for fourteen years at that time and had managed several stations, although he subsequently retired. He had received an award from Exxon for excellence in managing one of his former stations, including maintaining cleanliness. The station at issue did not generally have problems with cars leaking oil because it was located in an area where customers drove "nice" cars. Villareal's main priority was safety: he began each workday by conducting a complete exterior inspection, including ensuring the grounds were clean and there were no safety hazards; during the day, he and employees regularly performed safety checks near the pumps; and he and employees observed the pump areas even when they went outside for other purposes. If Villareal learned of a spill by the pumps, he would immediately attend to it by placing absorbent material on the ground, roping off the area, or placing warning signs. He had never ignored a spill that he personally observed or was reported to him. Villareal did not remember the incident because it occurred seven years before trial. However, he maintained that he was present at the time of the incident because it occurred during his regularly-scheduled shift, he rarely missed work, and he completed and signed the Exxon incident report dated the same day, which was presented at trial. He would not have made the remarks described by Dyson because such a statement would have incorrectly reflected a shirking of his duties.

In rebuttal, both Sparks and Dyson testified that Villareal was not the manager with whom they interacted. Rather, they spoke with a "Middle Eastern," not Hispanic, man, who had a different physical appearance than Villareal. However, Villareal testified that Mohammed Yazjapina was not the station manager, although, as territory manager, he was Villareal's superior at the time of the incident.

3

In any event, Sparks claimed that she injured her lower back in the fall. She received various forms of treatment, including pain medications, steroid injections, chiropractic treatments, and physical therapy. According to Sparks, she was still experiencing back pain at the time of trial, which she attributed entirely to the fall at the station.

Sparks sued Exxon alleging its negligence caused Sparks's injury.[1] Among other defenses, Exxon pleaded that Sparks was contributorily negligent. In the charge, the jury was asked, "Did the negligence, if any, of those named below proximately cause the injury in question?" The jury answered "No" for Exxon and "Yes" for Sparks. Therefore, the jury did not answer the remaining questions regarding percentages of responsibility and damages. The trial court signed a final judgment ordering that Sparks take nothing on her claims. Sparks timely filed a motion for new trial and a motion for judgment notwithstanding the verdict, which were denied by written order.

## II. ANALYSIS

On appeal, Sparks challenges the negligence question submitted in the charge and the jury's findings. Sparks also attacks the trial court's admission of testimony regarding other injuries or conditions experienced by Sparks.

### A. Submission of Sparks's Alleged Negligence

In her first issue, Sparks contends the trial court erred by submitting an inquiry in the jury charge regarding Sparks's alleged negligence because there was no evidence to support such a finding. We need not decide whether any evidence

---

[1] Sparks also sued Sugar Creek Exxon, Inc., but Exxon Mobil Corporation was the only defendant named in the jury charge.

supported submission of Spark's alleged negligence because any error was harmless.

Submission of an improper jury question can be harmless error if the jury's answers to other questions render the improper question immaterial. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995); *Rebel Drilling Co. v. Nabors Drilling USA, Inc.*, No. 14-02-00841-CV, 2004 WL 2058260, at *8 (Tex. App.—Houston [14th Dist.] Sept. 16, 2004, no pet.) (mem. op.). A jury question is considered immaterial when its answer can be found elsewhere in the verdict or when its answer cannot alter the effect of the verdict. *Alvarado*, 897 S.W.2d at 752; *Rebel Drilling Co.*, 2004 WL 2058260, at *8. Submission of an immaterial issue is harmless error unless the submission confused or misled the jury. *Alvarado*, 897 S.W.2d at 752; *Rebel Drilling Co.*, 2004 WL 2058260, at *8. When determining whether a particular question could have confused or misled the jury, we "consider its probable effect on the minds of the jury in the light of the charge as a whole." *Alvarado*, 897 S.W.2d at 752; *Rebel Drilling Co.*, 2004 WL 2058260, at *8.

Submission of Sparks's alleged negligence was rendered immaterial by the jury's finding of no liability on the part of Exxon because any finding that Sparks was negligent could not alter the effect of the verdict. *See Alvarado*, 897 S.W.2d at 752–53 (holding submission of question on plaintiff's negligence was rendered immaterial by jury's finding of no liability on defendant's part because finding of plaintiff's negligence could not alter effect of the verdict); *Rebel Drilling Co.*, 2004 WL 2058260, at *8 (same, with respect to error in submitting third party in negligence question). Further, submission of Sparks's alleged negligence could not have misled or confused the jury. Negligence was defined separately for each

5

party, the jury was instructed that there could be more than one proximate cause of an occurrence, and the jury was instructed to allocate percentages of responsibility only if it found both parties were negligent. Therefore, the jury was not misled to believe it had to choose between Sparks and Exxon in assessing responsibility for Sparks's alleged injury; thus, inclusion of Sparks in the question could not have caused the jury to assess no liability against Exxon. *See Thota v. Young*, 366 S.W.3d 678, 694 (Tex. 2012) (holding any error in submitting contributory negligence of plaintiff, which was rendered immaterial once jury found no negligence for defendant, did not mislead or confuse jury because charge made clear that there could be more than one proximate cause and that jury had option to assess negligence against one or both or neither party); *Rebel Drilling Co.*, 2004 WL 2058260, at *8 (same, with respect to error in submitting negligence of third party). Accordingly, we overrule Sparks's first issue.

## B. Jury's Finding of Sparks's Negligence

In a portion of her second issue, Sparks contends the evidence is legally and factually insufficient to support the jury's finding that she was negligent. We employ a similar analysis used in our disposition of Sparks's first issue. Specifically, we need not consider whether sufficient evidence supported the finding Sparks was negligent because, again, such finding was rendered immaterial once the jury assessed no liability on the part of Exxon. We overrule this portion of Sparks's second issue.

## C. Jury's Finding of No Liability on the Part of Exxon

In another portion of her second issue and in her fifth issue, Sparks contends the evidence is legally and factually insufficient to support the jury's finding of no liability on the part of Exxon.

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* When, as in the present case, a party attacks legal sufficiency relative to an adverse finding on which she had the burden of proof, she must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819.

In a factual-sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A party attacking factual sufficiency relative to an adverse finding on which she had the burden of proof must demonstrate that the finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242. We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We may not substitute our own judgment for that of the trier of fact or pass upon the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *GTE Mobilnet of S. Tex. L.P. v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Relative to Exxon's alleged negligence, the jury was instructed, in pertinent part,

With respect to the condition of the premises, [Exxon] was negligent if—

1. the condition posed an unreasonable risk of harm, and

2. [Exxon] knew or reasonably should have known of the danger, and

3. [Exxon] failed to exercise ordinary care to protect [Sparks] from the danger, by both failing to adequately warn [Sparks] of the condition and failing to make that condition reasonably safe.

We conclude the evidence is legally and factually sufficient to support a finding that, at least, the following element was not satisfied: Exxon "knew or reasonably should have known of the danger . . . ."

Sparks relies solely on Dyson's testimony regarding the manager's alleged comment after the incident—that he knew the substance was on the ground but he had not cleaned it. However, as sole judge of witness credibility and the weight to assign the evidence, the jury was free to believe that Villareal was the manager with whom Sparks and Dyson interacted and Villareal did not make any such comment. Moreover, based on Villareal's description of regular safety checks performed on the premises and indication that leaking oil was atypical at the station, the jury could have rationally concluded that the substance, if any, had not been on the ground for a sufficient length of time that Exxon reasonably should have known of its presence.

In summary, Sparks did not conclusively establish Exxon "knew or reasonably should have known of the danger" and the jury's finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and

unjust. Accordingly, we overrule this portion of Sparks's second issue and her fifth issue.

**D.     Admission of Evidence**

In her third and fourth issues, Sparks contends the trial court erred by admitting evidence regarding certain other injuries or medical conditions experienced by Sparks. We review a trial court's admission of evidence under the abuse-of-discretion standard. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or its decision is arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

To reverse a judgment based on an error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment. Tex. R. App. P. 44.1(a)(1); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). In making this determination, we must review the entire record. *Insterstate Northborough P'ship*, 665 S.W.3d at 220. Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Id.* "[T]he exclusion or admission is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment." *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). The exclusion or admission is likely harmful if the evidence is crucial to a key issue. *Id.*

After voir dire, the trial court heard arguments outside the jury's presence regarding whether Exxon would be permitted to mention the other incidents at issue during its opening statement. The trial court permitted Exxon to mention any incidents reflecting a complaint or diagnosis of back pain or whole body pain

9

(which would encompass back pain). However, the trial court precluded Exxon from suggesting that other incidents demonstrated Sparks was "accident prone" or referring to litigation resulting from these incidents. During cross-examination of Sparks, Exxon elicited testimony either acknowledging the following incidents or, at least, that a record reflected the incident; however, in some instances, Sparks attempted to offer an explanation that would not conflict with the claim that her back pain was caused by the fall at Exxon:

- 1990: She sustained soft tissue back injuries in two different car accidents, in which she was rear-ended, and she still had some pain at least two years later.

- 1994: She fell at a Wendy's restaurant; her primary injury was a shoulder fracture, but she also visited a chiropractor about six weeks later for lower back pain.

- 2002: She had an MRI when experiencing gastro problems so that the doctor could rule out back issues, and the result was "Mild lower lumbar and lumbosacral spondylosis."

- December 2003: She consulted a doctor for neck pain and reported a family history of neck and back problems. At trial, she acknowledged records reflecting she was having lower back pain but claimed the pain radiated to her back from a "female" issue.

- **August 21, 2004 – Fall at Exxon**

- December 2004: She complained to a doctor about "chronic left-sided lower back and groin pain which she relates to falls in August, 2004 and October, 2004, although she's been experiencing similar pain since a total abdominal hysterectomy performed, approximately two years ago." At trial, Sparks claimed she could not remember the incident in October 2004 and attributed the back pain entirely to the Exxon fall despite the doctor's report.

- March 2005: A chiropractor noted that Sparks "fell again two weeks ago, flared it up." At trial, Sparks claimed she could not remember this specific fall.

- 2006: She fell "pretty hard" at J.C. Penney's and fractured the tip of her "femur condyle." At trial, Sparks claimed she did not injure her back in this fall but acknowledged she was sore and bruised over her "entire body," which generally would encompass her back.

After the close of testimony, the trial court admitted some or all of the medical records referenced above, as well as medical records concerning other unrelated incidents, such as neck and ankle injuries. On appeal, Sparks primarily references and challenges admission of the above-cited testimony, but she also generally asserts, "In fact the Trial Court allowed the admission of all of Ms. Sparks medical record for the last two decades. Based on the foregoing standard this admission of this evidence constituted harmful error."

Sparks contends that the evidence was irrelevant and any probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evidence which is not relevant is inadmissible. Tex. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." *Id.* 403.

Assuming, without deciding, that Sparks preserved error on her complaints, we conduct a separate analysis for admission of (1) the incidents involving back pain during the four-year period encompassing the Exxon fall (2002-2006), (2) the 1990 and 1994 incidents involving back pain, and (3) conditions unrelated to back pain reflected in the medical records.

**The 2002-2006 incidents**

11

Sparks sought damages in the present suit for ongoing lower back pain which she claimed was caused wholly by the Exxon fall. Therefore, a fact issue was presented on whether Exxon proximately caused that condition, in whole or part, and the amount of damages, if any, to be assessed against Exxon. Even Sparks's medical records relative to the Exxon fall cast doubt on whether her back pain was attributable to the fall. At trial, Sparks acknowledged that records from her emergency-room visit immediately after the fall reflect that she reported pain in her left shoulder, left elbow, and left hip but there was no mention of lower back pain.

Therefore, the trial court acted within its discretion by determining that the other incidents involving lower back pain which occurred after the Exxon fall were relevant to show that some or all of Sparks's back pain was not attributable to the fall; as shown in the above list, during the two-year period after the Exxon fall, Sparks reported lower back pain due to two other falls (in October 2004 and March 2005), general soreness all over her body (which would include her back) due to an additional fall (in 2006), and lingering lower back pain due to a hysterectomy performed approximately a year and a half before the Exxon fall.

Similarly, the trial court acted within its discretion by determining the incidents in 2002 and 2003 were relevant to show that Sparks was already experiencing lower back pain within about a two-year period before the Exxon fall. The relevance was enhanced by Sparks's report to a doctor after the Exxon fall that she was indeed experiencing back pain due to a hysterectomy before the fall. Moreover, these incidents were relevant to Sparks's overall credibility on all disputed fact issues because Sparks made claims at trial that were inconsistent with the evidence at issue.

With respect to Sparks's Rule 403 contention, she argues that, in light of the "highly charged political issue" of tort reform, evidence of the other incidents was intended to make Sparks "look like a repeated litigant with the hopes of hitting the lottery." However, consistent with the trial court's instruction, Exxon did not elicit testimony that any of the other incidents resulted in litigation and focused instead on the actual injury or condition. To the extent the jury may have surmised that any other incidents resulted in litigation, the trial court acted within its discretion by determining that any negative connotation did not substantially outweigh the probative value of the incidents during the four-year period encompassing the Exxon fall.

### The 1990 and 1994 incidents

We acknowledge that the 1990 and 1994 incidents were somewhat remote in time to the Exxon fall. Additionally, there was no indication that the 1990 incident involved **lower** back pain in particular. Even if the trial court abused its discretion by admitting testimony regarding the 1990 and 1994 incidents, any error was harmless. In light of the properly admitted evidence regarding the 2002-2006 incidents, from which the jury could have directly questioned Sparks's credibility and whether Exxon caused her back injury, the judgment did not turn on the evidence regarding the 1990 and 1994 incidents.

### Other medical conditions

Finally, we agree that records reflecting medical conditions, unrelated to the back pain, were irrelevant. However, any error in admitting such records was also harmless because (1) the jury did not necessarily draw negative connotations simply because Sparks experienced other medical conditions which any person might experience during his or her lifetime, (2) Exxon did not mention these other conditions during its opening statement, cross-examination of Sparks, or closing

13

argument, much less suggest to the jury that they negated her cause of action, and (3) again, in light of the properly admitted evidence regarding the 2002-2006 incidents, the judgment did not turn on records regarding unrelated conditions. Accordingly, we overrule Sparks's third and fourth issues.

We affirm the trial court's judgment.


/s/    Margaret Garner Mirabal
       Senior Justice


Panel consists of Justices Boyce, McCally, and Mirabal.[2]

---

[2] Senior Justice Margaret Garner Mirabal sitting by assignment.

14