**Affirmed; Opinion Filed February 13, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00997-CV

### HOWARD MINTZ, M.D., Appellant
### V.
### JULYE NESBITT CAREW, M.D., P.A. AND MICHELLE CHESNUT, M.D., P.A., Appellees

### On Appeal from the 14th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-14-08087

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Boatright
Opinion by Justice Evans

Appellant Howard Mintz, M.D. sued appellees Julye Nesbitt Carew, M.D., P.A and Michelle Chesnut, M.D., P.A. for breach of contract and tort claims. Carew and Chesnut countersued. The jury found for Carew and Chesnut and awarded them actual damages (the "first trial"). The trial court conducted a second trial with a new jury solely to permit Carew and Chesnut to present evidence of attorney's fees (the "second trial"). Mintz first argues that this Court should reform the trial court judgment to remove the attorney fee award because Carew and Chesnut failed to present evidence of attorney's fees during the first trial. In the alternative, Mintz requests that this Court reverse the trial court's judgment and remand the case because the trial court abused its discretion by: (1) conducting a separate trial before a different jury on attorney's

fees; (2) excluding evidence during the second trial about the damages awarded in the first trial; and (3) excluding Mintz's evidence of fraud damages. We affirm.

## BACKGROUND

This litigation concerns the termination of an office-sharing agreement—the Co-Office Share Agreement and Management Agreement dated June 27, 2008—between the three physicians. The agreement provided that Carew and Chesnut would not solicit employment from Presbyterian Hospital of Dallas or from any competitor of Mintz during the term of the agreement and for eighteen months thereafter. The parties later executed an amendment to the agreement which eliminated the covenant not to compete clause. In 2014, Carew and Chesnut terminated the office-sharing agreement but elected to continue practicing medicine together.

Mintz sued Carew and Chesnut for breach of contract, fraud, fraudulent inducement, tortious interference with contract and prospective business relations, and declaratory judgment. Carew and Chesnut countersued for breach of contract, fraud, fraudulent inducement, conversion, and unjust enrichment.

The trial court granted summary judgment to Carew and Chesnut regarding Mintz's claim for breach of contract. The trial court also barred Mintz from introducing evidence of fraud damages during the trial based on inadequate disclosure of those damages during discovery. During a pretrial hearing, the trial court advised the parties that its policy was to take up attorney's fees post-verdict and not present this issue to the jury. None of the parties objected to this statement by the trial court. On June 23, 2015, the case proceeded to trial on Mintz's claims for tortious interference and Carew and Chesnut's breach of contract counterclaims. The jury returned a verdict in favor of Carew and Chesnut by finding that they did not wrongfully interfere with Mintz's prospective contractual relations and that Mintz breached the parties' agreement.

Before the parties rested and again at the end of the trial, Mintz requested a jury trial on the attorney's fees issue and the trial court denied his request. Following the trial, Carew and Chesnut moved for attorney's fees and the trial court conducted a hearing. At the hearing, the trial court also asked the parties to address the issue of whether the trial court had erred in denying Mintz a jury trial on attorney's fees. At a follow-up hearing on this issue, the trial court stated that it planned to bring the jury back for a hearing on the issue of attorney's fees. At the next hearing, the trial court noted that both parties agreed that bringing back the same jury would be inappropriate. Mintz argued that a separate trial was also inappropriate and requested that the entire case be retried. Carew and Chestnut argued that the trial court had the right to impanel a new jury. A jury trial was then scheduled to address the issue of attorney's fees.

On May 17, 2016, a trial before a new jury was conducted on the issue of attorney's fees. The jury awarded attorney's fees of $383,605.14 to Carew and $383,197.83 to Chestnut. On May 31, 2016, the trial court entered final judgment on both verdicts. Mintz then filed this appeal.

## ANALYSIS

### A.     Waiver of Attorney's Fees and Second Trial

In his first issue, Mintz argues that Carew and Chesnut waived recovery of their attorney's fees because they failed to present evidence of them at the first trial. Mintz also argues that the trial court abused its discretion by ordering a second trial on attorney's fees.

#### 1.     Additional facts

During a pretrial hearing on a joint motion in limine, the parties raised various issues to the trial court. When the parties came to issue E(5) regarding fees and expenses, the following exchange took place:

| [Trial court]: | It's this Court's intention – this Court's practice that attorneys' fees issues are not presented to the jury. They're taken up by the Court post-verdict. So we don't have any conversation about attorneys and attorneys' fees. |
|---|---|

[Counsel for Carew]:  Thank you, Your Honor.

During the trial, the court reaffirmed its position when the issue of attorney's fees again arose during the cross-examination of Carew:

[Counsel for Carew]:  Your Honor, if I may, there's a limine issue that I wanted to raise with the Court.

[Trial court]:  Plaintiff's motion or Defendants' motion?

[Counsel for Carew]:  It's an issue about attorneys' fees.

[Trial court]:  No – Attorneys' fees are not going to be put before the jury.

[Counsel for Carew]:  This was just going to be for the demand. So I'll just –

[Trial court]:  Attorneys' fees are not going to be put before the jury.

[Counsel for Carew]:  No, I understand.  All right.

[Trial court]:  Let's move along.

Finally, after the plaintiff and defendants had rested, the following exchange took place:

[Trial court]:  You had an issue, [counsel for Carew].

[Counsel for Carew]:  I do, Your Honor. I needed to make a proffer on our attorneys' fees; I don't think I need to based on the Court's ruling, but nonetheless, just to preserve I just want to make a proffer.

[Trial court]:  And you may.

[Counsel for Carew]:  And I'll do that whenever you're ready.

[Trial court]:  Actually, I tell you what I want both of you to do.

[Counsel for Carew]:  Certainly.

[Trial court]:  This will save us some time, if you both are so inclined.  You may make that in writing and I will receive that and I will deem that that was timely submitted as part of the record.

[Counsel for Carew]:  Thank you.

Following the discussion provided above, counsel for Mintz again raised the issue of a jury trial on the attorney's fees issue.

| [Trial court]: | All right. You had another issue, [counsel for Mintz]? |
|---|---|
| [Counsel for Mintz]: | Yes, there are two issues. We've obviously had a lot of off-the-record conversations to administer the case. I just want to make sure that on the record yesterday afternoon the Court had informal discussion with us about the charge conference and what issues it was going to submit. |
| [Trial court]: | Hadn't got into the charge, yet. |
| [Counsel for Mintz]: | Yes, Your Honor, but we did visit about it yesterday and at that time I did raise with the Court that my client was asking for a jury trial on the attorneys' fees issue. |
| [Trial court]: | Yes, sir. Yes, sir. And I have declined that. |
| [Counsel for Mintz]: | Yes, Your Honor. |
| [Trial court]: | And I believe I did that on the record. Anyway, what else do we have? |
| [Counsel for Mintz]: | That's all. I just didn't think it was on the record, Your Honor. |
| [Trial court]: | Okay. All right. |

At the end of the trial, Mintz requested a jury trial on attorney's fees and the trial court denied his request. After the trial concluded, the trial court heard appellees' motion for attorney's fees. At the hearing, Mintz again raised his argument that the trial court erred in denying him the right to trial by jury on attorney's fees. The following exchange then took place:

| [Trial court]: | So what do we do, [counsel for Mintz]? We impanel a new jury that has -- I assume you want me to take the position that they're not entitled to attorneys' fees. That's not going to happen. So -- |
|---|---|
| [Counsel for Mintz]: | Understood. |
| [Trial court]:: | -- we'll take that off the table. Impanel a new jury? Do we try the entire case or just the issue of attorneys' fees? |
| [Counsel for Mintz]: | Your Honor, we believe the whole case would have to be retried -- |

| | |
|---|---|
| [Trial court]: | Okay. |
| [Counsel for Mintz]: | -- again, but -- |
| [Trial court]: | I understand that's your position; I think that's grossly overreaching. |
| [Counsel for Mintz]: | May I just be heard on that, Your Honor? |
| [Trial court]: | No, Counsel, I -- I really -- No. I'm -- I read your opposition and I've read it before, I don't think -- so your position is preserved for the record. |

### 2. Analysis

Mintz first argues that Carew and Chesnut waived their right to recover attorney's fees because they failed to offer evidence of them during the first trial. Mintz specifically argues that because Carew and Chestnut rested and closed without presenting any evidence of attorney's fees, we should reverse the award of attorney's fees and reform the judgment to remove that award.

We disagree. Waiver is defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *See Jernigan v.* Langley, 111 S.W.3d 153, 156 (Tex. 2003). As stated above, the trial court clearly informed the parties—both before and during the trial—that attorney's fees would not be presented to the jury. Further, the trial court noted in a post-trial hearing that it would not entertain any argument from Mintz that Carew and Chestnut were not entitled to seek attorney's fees. Thus, the trial court itself recognized that it had not allowed Carew and Chestnut to present evidence of attorney's fees. Based on the facts stated above, we cannot conclude that Carew and Chestnut intentionally relinquished their right to recover attorney's fees when the trial court itself prevented them from presenting any evidence on this issue. As such, we overrule Mintz's first issue.

In his second issue, Mintz argues that the trial court abused its discretion by ordering a second trial. We agree with Mintz's argument that there is no judicial efficiency in having two separate juries decide the issues in this case. However, we need not reach the issue of whether the

–6–

trial court abused its discretion in granting a separate trial based on rule 174(b) of the Texas Rules of Civil Procedure because Mintz has not shown harm in this case. *See* TEX. R. APP. P. 44.1 ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment."). Texas appellate courts remand cases in which a new jury must address the issue of attorney's fees; consequently, we cannot conclude that Mintz, although inconvenienced, was harmed by having a second jury address the issue of attorney's fees. *See, e.g., Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 884 (Tex. 2017) ("In this instance, vacating the attorney's fees award and remanding for a new trial on the issue is proper.") (citing *Bossier Chrysler-Dodge II, Inc. v. Rauschenberg*, 238 S.W.3d 376, 376 (Tex. 2007) (per curiam); *Barker v. Eckman*, 213 S.W.3d 306, 314–15 (Tex. 2006)). Accordingly, we overrule Mintz's second issue.

### B. Exclusion of Evidence

In his third and fourth issues, Mintz argues that the trial court abused its discretion by excluding (1) evidence during the second trial about the damages awarded in the first trial and (2) Mintz's evidence of fraud damages during the first trial.

#### 1. Standard of review

The admission and exclusion of evidence is committed to the sound discretion of the trial court. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Id.* at 754. A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. *Id.* at 753.

## 2.    Exclusion of damages awarded in first trial

Mintz notes that the following factors should be considered in determining the amount of reasonable attorney's fees to award:  (1) the time, labor, and skill required to properly perform the legal service; (2) the novelty and difficulty of the questions involved; (3) the customary fees charged in the local legal community for similar legal services; (4) the amount involved and the results obtained; (5) the nature and length of the professional relationship with the client; and (6) the experience, reputation and ability of the lawyer performing the services.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).  Mintz then argues,

> The Texas Supreme Court has cited with approval the United States Supreme Court's holding that the "degree of success obtained" is "the most critical factor" in determining the reasonableness of attorney's fees.  *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

From this, Mintz concludes that the jury was prevented from accurately determining reasonable attorney's fees because the trial court prevented him from introducing the "crucial" evidence that Carew and Chestnut recovered only $16,000 on their claim.  We disagree.

As an initial matter, the jury did hear about the amounts Carew and Chestnut obtained on their counterclaims.  First, Mintz's counsel made the following statement to the jury during his opening statement:

> The questions that the previous jury answered that sat in the exact same seats that you're sitting in, there were six questions that Dr. Carew and six questions that Dr. Chestnut had that asked for damages. Five of the six were zeros and one of them was for $8,000.

The trial court sustained the objection but did not instruct the jury to disregard the statement.  In addition, during his opening statement to the jury, Carew's attorney stated three separate times that his client "only won $8,000" in the underlying litigation.  Finally, during voir dire, Mintz's attorney asked the following question:  "Does anybody think it's reasonable to have four law firms and a dozen lawyers hired on a case that only takes three days to try to a jury and results in a

$16,000 verdict? Does anybody think that's reasonable?" So the record reflects that counsel for both sides informed the second jury that the first jury awarded a total of $16,000.

We further note that the jury charge did not instruct the jury that any consideration should be given to the amount involved and results obtained when deciding reasonable and necessary attorney fees because the charge did not contain any of the *Arthur Andersen* factors. Instead, the jury charge only contained the following instruction specific to attorney's fees:

> Instruction on Prevailing Party[.] You are instructed that Julye Nesbitt Carew, M.D., P.A. and Michelle Chestnut, M.D., P.A. are entitled to an award of their reasonable and necessary attorneys' fees incurred in connection with the litigation styled Howard Mintz, M.D. v. Julye Nesbitt Carew, M.D., P.A., et al., Cause No. DC-14-08087 in the 14th District Court in Dallas County, Texas.

Mintz did not object to the omission of the *Arthur Andersen* factors from the jury instruction and does not raise an issue concerning that omission in this appeal. Moreover, we have repeatedly held that evidence of each of the *Arthur Andersen* factors is not required to support an award of attorney's fees. *See Ellis v. Renaissance on Turtle Creek Condo. Ass'n, Inc.,* 426 S.W.3d 843, 856 (Tex. App.—Dallas 2014, pet. denied); *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.). Mintz does not complain the jury lacked evidence of other *Arthur Andersen* factors. Based on this record, we cannot conclude that the trial court abused its discretion. Accordingly, we overrule Mintz's third issue.

### 3. Exclusion of fraud damages during first trial

In his fourth issue, Mintz complains about the trial court's exclusion of his fraud damages during the first trial. This first occurred at a pretrial hearing on June 22, 2015 when counsel for Carew advised the court that Mintz failed to disclose a damage amount for fraud in response to her disclosure requests.[1] Carew's attorney also advised that during Mintz's deposition he failed to

---

[1] Mintz's response to Carew's request for disclosure for the amount and method of calculating economic damages listed damages for his various causes of action stating "[m]onetary damages for fraud in an amount to be reasonable and just by the trier of fact."

disclose the amount of monetary damages he was seeking against Carew and Chestnut for the fraud claim. Mintz's testimony during the deposition on May 1, 2015, was as follows:

[Counsel for Carew]: Thank you. The next statement on page 3 of Exhibit 50 is you [sic] claim "Monetary damages for fraud to be determined by the trier of fact." Did I read that correctly?

[Mintz]: You did.

[Counsel for Carew]: Have you withdrawn the claim?

[Mintz]: No, I have not.

[Counsel for Carew]: How much monetary damages for fraud are you seeking against Dr. Carew and/or Dr. Chestnut?

[Mintz]: I don't know what that number is.

[Counsel for Carew]: Well, how have you calculated the number?

[Mintz]: I'm not - - -

[Objection to form]

I'm not the – I don't have that calculated. I'm not an attorney.

[Counsel for Carew]: Well, what are you going to ask for and what are you asking for for damages related to fraud?

[Objection to form]

[Mintz]: Are you asking me for a specific number? I have no way of knowing that. I don't know.

[Counsel for Carew]: Can you give me a general number?

[Mintz]: I can't give you a general number.

[Counsel for Carew]: Well, how do you propose that Dr. Chestnut and Dr. Carew defend against a number if they don't know what it is?

[Objection to form]

[Mintz]: I think that that's a legal discussion, and I am not an attorney.

[Counsel for Carew]: Well, in fairness to you, I want you to tell me in a nonlegal way how much money you're suing them for for fraud.

| | |
|---|---|
| [Mintz]: | I don't think I've ever that [sic] had that discussion with my attorneys. |
| [Counsel for Carew]: | Well, I'm just asking you personally, how much are you suing for? |
| [Mintz]: | I haven't really thought of that, sir. |
| [Counsel for Carew]: | Are you unable to tell me how much you're suing for for fraud? |
| [Mintz]: | At this point, yes. |
| [Counsel for Carew]: | Have you ever had a number that you were suing for for fraud in this case? |
| [Mintz]: | A specific number, no. |
| [Counsel for Carew]: | Yes, sir. How about a general number? |
| [Mintz]: | A general –-<br><br>[Objection to form]<br><br>I really don't know. |

The trial court then excluded all evidence of damages in support of Mintz's affirmative claim for fraud by stating:

> Well, I'm not going to let Dr. Mintz testify to anything that he's not testified here in the deposition which means he's not going to testify with regard to any fraud damages. That's my ruling.

On June 23, 2015, Mintz then filed an emergency motion for rule 193 hearing on the ruling to exclude the fraud damages testimony. The trial court denied the motion and Mintz's request for an evidentiary hearing on the matter. During the trial, Mintz's attorney again requested that he be permitted to put on evidence of the fraud case and the trial court denied the request.

Rule 194 provides that a party may request disclosure of the amount and any method of calculating economic damages. *See* TEX. R. CIV. P. 194.2(d). The rules further provide that a party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed unless the trial

court finds that: (1) there was good cause for the failure to timely make, amend, or supplement the discovery response or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties. *See* TEX. R. CIV. P. 193.6(a).

Mintz argues that Carew or Chestnut could not have been surprised or prejudiced by the amount of damages he sought for their alleged fraud because he disclosed the responsive information "well before trial." Mintz argues that he disclosed that his damages included "loss of the amount of the buyout of the non-compete clauses" in his third, fourth, and fifth amended petitions. He also argues he plainly testified during his deposition that he calculated his damages based on the buyout clause and the amount of Carew's income. Mintz also argues that he described the damages sought in his brief supporting his application for injunctive relief and his pretrial statement. We disagree.

The party offering the undisclosed evidence has the burden to establish good cause or lack of surprise, which must be supported by the record. *See* TEX. R. CIV. P. 193.6(b). Mintz's argument that there was no surprise or prejudice to Carew or Chestnut fails because the material he cites contains numerous, different amounts and methods of calculating damages. First, the amount "disclosed" for fraud damages in Mintz's third, fourth, and fifth amended petitions was stated as "actual damages, including loss of the amount of the buyout of the non-compete clauses, tenant improvements, ownership interest in office equipment, reimbursement for expenses such as contractual expenses and property taxes, patient revenue, damage to reputation, and costs of having to move his medical practice and replace office equipment, in an amount in excess of $100,000 but not more than $1,000,000." Second, Mintz argues he clearly testified in his deposition he was seeking "around $600,000" based on Carew earning $300,000 per year plus his moving expenses. As Carew and Chestnut point out, however, this deposition testimony involved Mintz's breach of

–12–

contract claim, not his fraud claim. (We already quoted above Mintz's deposition testimony specific to his fraud claim damages). Third, Mintz references the following language from his application for injunctive relief:

> Defendants fraudulently induced Dr. Mintz to release their non-compete obligations by misrepresenting their intent to remain in practice with him. Dr. Mintz relied on the misrepresentations to his detriment by releasing Defendants from their non-compete clauses and thus paving the way for Defendants to carry on their medical practice within two miles of Presbyterian Hospital Dallas without paying the $400,000 buyout amount for the non-compete obligations.

Finally, in Mintz's pretrial statement he described his damages as a result of Carew and Chestnut's fraud "in the amount of the buy out of her covenant not to compete for $200,000 or the equivalent of the last 24 months of income paid to her, whichever is greater." Thus, the record on which Mintz relies required Carew and Chestnut to guess which of numerous, different amounts between $100,000 and $1,000,000 and differing methods of calculating those amounts would be used by Mintz at trial. This record does not support Mintz's argument that Carew and Chestnut knew how Mintz calculated his damages. As Mintz had the burden to establish good cause or lack of surprise and he failed to do so, we cannot conclude that the trial court erred in excluding the evidence. Accordingly, we overrule Mintz's fourth issue.

## CONCLUSION

We resolve Mintz's issues against him and affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

160997F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HOWARD MINTZ, M.D., Appellant

No. 05-16-00997-CV          V.

JULYE NESBITT CAREW, M.D., P.A.
AND MICHELLE CHESNUT, M.D., P.A.,
Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-08087.
Opinion delivered by Justice Evans.
Justices Francis and Boatright participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees JULYE NESBITT CAREW, M.D., P.A. and MICHELLE CHESNUT, M.D., P.A. recover their costs of this appeal from appellant HOWARD MINTZ, M.D.

Judgment entered this 13th day of February, 2018.